Hemphill, Ch. J.
In determining upon the effect of the death or destruction of a specific chattel pending a suit for its recovery, we experience the difficulty arising as well from a conflict between the authorities accessible to the -court as upon the fact that in one of the cases the effect of the loss of the ■chattel is made to depend upon the form of action instituted by the plaintiff. That is to say, that if the action be in detinue, there maybe cases in which the defendant will be exonerated .from responsibility by the annihilation of the chattel; but if in trover, the loss can have no effect upon the amount to be recovered. But forms of action are not recognized under our system of pro-cedure. If a legal or equitable right be violated, the party may, for redress, file his petition, framed according to the “ peculiar circumstances of his own grievance.” The only inquiry is, does the petition disclose a valid right of action? and not, whether the form of an action in detinue, trespass, or trover is pursued. (2 Tex. B., 210.)
If it be held, then, that in any case the death or destruction of the specific property, after suit commenced, will affect the liability of the defendant, it must be upon principles too compi'ehensive for the artificial confines of a particular form of action, and which will distribute justice irrespective of the peculiar forms of allegation pursued by the party seeking recovery. In other words, the rights of the parties must depend upon the facts of the case, and not upon ■the averments of the plaintiff, who, upon the same facts, may adopt either one of two or several modes of allegation.
We have had access only to the eases decided in Kentucky, Alabama, and North Carolina, touching the subject-matter. The first case in Kentucky involving the question is believed to be that of Carrel v. Early, (4 Bibb R., 270,) and the court, after acknowledging that, at first view, the question ■presented considerable doubt, finally held that the death of the chattel, after suit, did not defeat the action; and it is said, “ that were the recovery of the specific thing the absolute and sole object of the action of detinue, the destruction or annihilation of the thing would necessarily defeat the action; but as the object of the action is to recover the thing only upon the condition that it ■can be had, and if not, then its alternate value, it results that the action cannot be defeated by the destruction of the thing, unless under circumstances that would excuse the defendant from being responsible for its value.” And defendants in detinue were regarded as bailees, who are held responsible for losses by casualty or violence, after refusal to return the things sued for on lawful demand. In Gentry v. Barnett, (6 Monr. R., 115,) the above case was cited, and the doctrine in substance affirmed and enforced upon a plaintiff in an action of replevin. Much force was given to the stipulations of the replevin bond, which, it is said, bound the party to restore, not excepting the event of the death .of the slave. In Scott v. Hughes, (9 B. Monr. R., 106, 107,) both these cases were considered, and the principles maintained in them analyzed .and approved; and it was said that the eases where the party in possession is held to be not responsible for the death or escape of the slave (2 Da. R., 249) are not analogous to the action of replevin in this essential particular; that in the former cases the party was guilty of no wrong in either obtaining or retaining possession; whereas in detinue or replevin, the possession is deemed wrongful if the claim be adjudged groundless and invalid.
The first case in Alabama is White et ux. v. Ross. (5 Stew. & Port. R., 123.) 'The bill was to enjoin a judgment in an action of detinue for a slave or his value, the slave having died during the pendency of the suit. The point is discussed ■as if the defense had been urged in the original suit, and it was held *238 that the death of the slave did not change the right of the parties or the amount to be recovered. In support of their opinion, the court referred to the case cited above from 4th Bibb, as also to the cases of Austin v. Jones, (Gilm. R.,) and Skipper v. Hargrave, (Mart. N. C. R., 74.) The latter was a decision in North Carolina, and it will be seen that it was subsequently treated by the courts of that State as wanting in authority; and, from a review of the former by the court of North Carolina, it appears that the decision rested ou the state of the pleadings, and did not determine what would have been the effect of the death of the slave had it been properly averred.
We come now to the case of Bethea v. McLcnnon, (1 Ired. L. R., 523.) the-doctrines of which are in conflict with the cases previously cited, but to which we yield our assent, so far as they are of general application, and sufficiently comprehensivo to transcend the limitations of a special form of action. The suit was in detinue, and this was defined to be a mixed action brought to recover specific goods or the value thereof, and also damages for tiie detention and although "it was held to be clear that the death or the destruction of the specific tiling after suit was brought could not defeat the action, yet it might be well pleaded to so much as demauded the goods or their value. It was said that “ the act of God’does injury to no man.' When a tiling ceases to be because of a dispensation of Providence there maybe loss, but there is no injury, and this loss falls upon the owner of the property. We know of no instance where the law interferes to throw the loss from him upon others, where it is not attributable to culpable act or neglect. Then it is not a mere loss, but an injury; and the wrongdoer is justly answerable for it.”
A marked distinction was said to exist between the action of detinue and that of trover, though in many eases it is at the option of the plaintiff to bring-which he will.- “The former asserts a continuing property in the plaintiff, and alleges the wrong to consist wholly in the withholding the possession of liis goods from him by their bailee, while the latter affirms that, although they were once the proper goods of the plaintiff, they have been made the goods of the defendant, and complains of the injury caused by this conversion.” The distinction amounts to this, that by alleging detention the plaintiff makes himself owner, and by alleging conversion the defendant is made owner, and the loss falling upon the owner, it must, in one suit, be borne by the plaintiff, ancl in the other by the defendant. In detinue it is said that the jury is to find the present value; that “great alterations may happen in the value of things demanded pending the action, and the object of the action, so far as regards the things themselves, is to regain them, such as they are, or if that may not be done, then their value. If, in the course of a tedious action, a puny slave child has grown up to vigorous manhood, it would be a poor substitute for the slave himself to give the value of what he was when the action was instituted. If, on the contrary, a healthy, vigorous slave has been rendered valueless by sickness and decrepitude, it would be unconscientious to set upon him more than a nominal value. How ought the slave to bo valued that is no more? If he were on the brink of the grave at the time of the trial the jury would discharge their duty by valuing him at five cents; but if it is shown that before the trial he had fállela into the grave, is he to be paid for as of full health and vigor?Is there not an absurdity in affixing any value to what is judicially ascertained not to exist?
“Certainly when a man detains, without just cause, the goods of another, ho ought to be answerable to the full extent of the injury thereby inflicted.” “Where the owner, by reason of such detention, has been deprived finally of the thing detained, as by voluntary destruction, or through culpable negligence of the bailee, it is not material in what form the plaintiff gets his recompense f but he is not wholly compensated uuless lie-obtains both its use while detained and its value.” “But when such injury has not been inflicted he- *239 is compensated by being paid for the wrong of which he alone can complain. It is not undeserving of consideration, also, that in many eases actions o£ detinue-are brought to try some of the most difficult questions of title to slaves, and when botli parties are equally conscientious in asserting a claim thereto. If in all cases the holder is not only to be liable, in the event of a failure, for hire while they are in his possession, but also to be insurer of their lives, we drive him to the often inhuman alternative of making the most of them by sale, instead of keeping them to abide the fair result of the contest. In this case it would be manifestly unjust, because of a mere mistake of title, to make him responsible for an act of Providence which no prudence could avert., and which would probably have occurred had the possession been with Ids adversary. It is enough that, using the property humanely and prudently, lie account ‘for the use of it while in his possession, and deliver it up, if it exist, when the controversy is decided against him.” The court further sajr, in substance, that, no reliance is to be placed on the case cited from Martin, (p. 74,) as authority ; and that in the case cited (Austin v. Jones, Gilm. R.) the question was argued before three judges; that Judge Brook and Judge Coalter differed in opinion, and that Judge itoane concurred with the former, that the deatli of the slave could not affect the liability of the defendant, but lie placed this upon the narrow ground that the deatli had not been put in issue by a plea of puis darien continuance.
In recurring to the case to which we have referred, it will be perceived that, in Carrel v. Early, (4 Bibb, 270,) a defendant in detinue, whose claim is finally adjudged invalid, is, in all cases, charged with the responsibilities of a bailee-who wrongfully detains goods after their return has been lawfully demanded. This doctrine, followed in the Alabama cases, confounds all distinctions in the-character of titles under which defendants hold possession. It is immaterial whether the possession he in violation of an express bailment or trust, be acquired by force, violence, or fraud, or he held in good faith, for valuable consideration paid the reputed owner, and after years of acquiescence by those interested in disputing the title; whether it be without consideration, flagrantly and deliberately wrongful, or whether it be under title presenting the most complicated questions foi- solution, about which the most eminent jurists may differ; whether it he conscientious or be fraught with iniquity, — in either- and in all of these cases, if judgment be finally against the defendant, he is-deemed a wrongdoer, is placed in the same category with those who betray an express trust, is made an insurer of the continued existence of the chattel in controversy, and is deemed unworthy of relief against the loss of the property pending the suit, though this happen by no default of his own, but by the- “ dispensations of Providence.” The injustice of this indiscriminate infliction of a general rule, applicable properly to bailees unfaithful to their trusts, and to like cases, where the possession is inequitable and unconscientious, is too-apparent to require illustration.
The case cited from North Carolina is suggestive of instances and circumstances under which the rule would operate with extreme oppression; and the only objection to the principles and reasoning of the opinion in this latter case is, that the effect of an act of God on the rights of the parties depends for its acknowledgment or repudiation upon the arbitrary garb or covering which the pleadings of the plaintiff may he made to assume in tire controversy. Now, the action of detinue, for the recovery of property held in possession by another, is coextensive wúth (hat of trover. If the retention of possession be against law, either action will lie; and no inquiry is made whether the act of’ taking possession be rightful or tortious. The general allegations in detinue are similar to those in trover. And can it he of any consequence whether the plaintiff alleges that the defendant is detaining the property of the plaintiff or that he has converted the same to his own use? He has the power, at will, to make either the one or the other allegation. But can his naked asser— *240 tion, by its own force, change the rights oí the parties, and this so as to affect ■even the acts of Omnipotence itself"? In some of the States the plaintiff has the right to demand security that the property shall be forthcoming in satisfaction of the judgment in trover. This would be improper and anomalous, if the plaintiff, from his allegation of conversion by the defendant, had divested himself and invested the defendant with title to the property. If there be an actual conversion — that is, for instance, if the property has been sold by the defendant — its subsequent loss or destruction could not affect the right of recovery; but where it remains in defendant’s possession, his rights, or the ■effects of inevitable casualty, cannot depend on a circumstance so immaterial as the phraseology of the complaint of the plaintiff in seeking its recovery.
This would most certainly be the case under our system of procedure, which ■does not admit of the artificial trammels of forms of action. What should be the rule where these forms are still preserved it would, perhaps, be presumptuous in this court to attempt to decide.
It appears, then, that the liability of the defendant must result from the facts of the case, and not from the averments of the petition. If the possession of the defendant be wrongful, in the popular acceptation of the term — if 'it be inequitable and unconscientious, acquired, for instance, in violation of a trust, or by force, violence, or fraud, he should in all events be responsible for the value of the property. But, if he hold by title acquired in good faith — if his claim be not destitute of equity or have probable foundation in law — if it 'be conscientious, he cannot be treated as a willful wrongdoer, not relievable •even as against the act of Divine Providence. In short, his responsibility must ■depend upon the peculiar circumstances of the particular case.
Let us now examine the facts of the case under review, to ascertain the liability of the defendant.
It appears that the deed of trust was not recorded in Victoria county .at the time of the sale; nor was the boy, by name, embraced in the deed. These circumstances, unrebutted, though not sufficient to defeat the title set up and sustained by proof, would conduce to show the defendant’s ignorance ■of the plaintiffs’ rights, and his good faith in the transaction. But any favorable presumption arising from these is overthrown by contradictory facts. The husband, at the date of the transaction, was more or less intoxicated. Possession was not to be given until after the expiration of twenty days; and in the interval the defendant had distinct notice of the claim of Mrs. Porter, and of her order inhibiting the delivery of the boy to him. The deed of trust was also recorded in Victoria county before the twenty days had elapsed; and although the slave was not therein included, yet its terms were (under the ■circumstances) sufficient to have stimulated inquiry on the part of the defendant as to the investment of the trust funds, at least so far as the title to the slave was involved. Mo money was paid by the defendant, the only consideration being an executory contract for the sale of land, from the performance •of which he was released by the acts of the plaintiff, John T. Porter; and it appears to have been susceptible of proof that the contract was disregarded by the defendant and the lands sold to another.
Upon the facts, the claim of the defendant was not only without the shadow of support in law, but was wholly unconscientious. Had the slave lived, the •defendant could not have been a loser by a judgment of recovery against him. The land would still be his; and no other consideration but that had been proposed or given. A claim thus characterized by the obnoxious traits of tort .and injustice cannot shield the defendant from responsibility for the value of the slave, though the latter may have perished without default on the part of the defendant and by a casualty beyond human control.
To illustrate the rule, let ns suppose that the defendant having failed to replevy, the property had been delivered to the plaintiff, and that the *241 'negro had died pending the suit. Had the plaintiff failed to make oiit her title, she would have been exempt from liability for the value of the slave, as well from the reason that, under the facts, her claim was consistent with good ■conscience, as that the defendant had paid nothing for the property, and, by the acts of the other party, he was relieved from the performance of his contract. The subject is interesting, but its discussion cannot, for the present, be further extended. The rule should not he rigorously construed when the claim •of the defendant is not unconscientious. If his possession be in good faith, it would seem almost impious to make him responsible for an act of God. ■ Let us suppose that a defendant is sued for lands, held in good faith, blit, as it might appear upon trial, without legal right, must he respond in the value; of the land if, before judgment, it wore swallowed up by an earthquake? Had he, with violence, driven forth the lawful possessor, he might, by way of compensation for the original injury, he adjudged to pay the value of the land. The subsequent destruction of the property would, in that event, he regarded as immaterial; and this "would accord with the rule we have established for the estimate.of damages where the suit is for a chattel.
Ho doubt the rules, as deduced from the cases in Kentucky, Alabama, and North Carolina, are more convenient in practice from their certainty. By the two former, the dispensations of Providence are, under no circumstances, available to the unsuccessful defendant; and by the latter, their effect is under the control of the pleadings of the plaintiff. But courts must attempt the distribution of justice according to the very right of the parties, although attended with inconvenience. The solution of questions affecting rights4nust always occasion more or less inquiry and trouble. The antiquated rule by which the husband on marriage was vested with comparatively all the property of the wife, was extremely convenient to husbands, creditors, and purchasers, but it certainly would now be deemed but a frivolous argument against the right of married women to hold separate property; and whatever may be the difficulties of adjusting marital rights, these would not, in the present advanced stage of civilization,'be held to justify the annihilation of such rights, and the subjection of the wife to the caprice, folly, or wickedness of a perhaps worthless, drunken husband ; and that there are some such, the evidence in this case abundantly shows. The mere fact that a rule is inconvenient is no argument against its justice or propriety..
There was no error in quashing the writ of sequestration on the grounds-stated ; but there appears to be no sufficient reason for the rejection of the motion to amend the writ, and to permit the sheriff' to amend Ins return in ■conformity with the facts. The recital in the writ evidently proceeded from misapprehension by the clerk of the statements in the petition. In the case of Kavanagh v. Brown (1 Tex. R., 483) it was held to be competent to allow an amendment of the writ by the petition, and that nothing lias been more usual than to allow a subsequent mistake to be amended by something that preceded it. The subject of amendments lias been discussed in several cases decided by this court, and fully and elaborately in Cartwright v. Chabert, (3 Tex. R., 261;) and on the principles laid down in those cases, we are of opinion that the amendment was admissible. Had the bond followed the mistake in the writ, there might have been more difficulty. But the recital in the bond pursues the allegations of the petition, and shows the property to have been claimed by Persia A. Porter, and not by the petitioners jointly. (11 La. R., 445, Segur et al. v. Joret et ux.) There was error in refusing to permit the sheriff to amend his return. By article 081, Digest, it is expressly declared that any mistake or informality in a return may be corrected by the officer at any time under the direction of the court. (Fleming v. Powell, 2 Tex. R., 225.) The judgment of the court in refusing the amendments of the writ and ■of the officer’s return, and in quashing the bond-of defendant and his sureties, is hereby set aside and reversed.
Note 65. — 'Townsend v. Hill, 18 T., 422; Birge v. Wanhop, 21 T., 478; Pait v. McCutchen, 43 T.». 291; seo Diamond v. Earns, 33 T., 034.
It is hereby ordered, adjudged, and decreed that the judgment be reversed,, and the cause remanded for further proceedings.
Judgment reversed.