### J. R. IRVIN v. JOHN R. BEVIL ET AL.

No. 2998.

1. **Spanish Title—English Field Notes—Archives.**—The English field notes being the original and being preserved along with the Spanish copy of them as an archive, and the title itself not containing the field notes but referring in that respect to the report of the surveyor, we think it was proper to treat them (the English field notes) as part of the title, and not as extraneous evidence changing or contradicting it.

2. **Contradictory Calls—Pleading.**—Treating the English field notes as part of the title and the calls being inconsistent, it was proper in a suit involving the locality of the grant to allege in the petition and describe the correct call, and to introduce evidence to sustain the pleading.

3. **General Demurrer.**—In setting out the English field notes of a rectangular grant alleged for the purpose of correcting an imperfect and erroneous description in the Spanish field notes forming part of the title, there was an evident omission of one of the calls. The defect was not reached by a general demurrer. Nor would the defect, which is manifest, be ground for objection to the field notes in evidence on ground of variance.

4. **Identity of a Grant—Testimony.**—This was an action for the value of timber cut on the "A. Burrell league in Hardin County." If to ascertain the location of the land it was proper to resort to the original field notes as made by the

surveyor, and as an addition to them the plaintiffs without objection introduced the county map and some parol evidence to support their allegation as to the locality, the defendant introducing none, it was for the court and not the jury to determine the relative value of the English field notes and the Spanish copy of them. There being no conflict in the evidence the .court did not err in refusing to submit the issue as to the locality of the land as if there were conflicting evidence.

5. **Amending Commission to take Depositions.**—Interrogatories were filed to take the depositions of a witness. The notice stated the county of his residence. The depositions were regularly taken by an officer of that county and properly returned. An error by the clerk in the commission giving a wrong name for the residence of the witness was properly amended under direction of the court.

6. **Laches.**—The grant was issued in 1835. In a suit brought for trespass upon it the defense of laches did not apply to the suit by reason of the lapse of time from the date of the grant to the date of the suit alleging the errors in description of the land covered by the grant.

7. **Recitals—Certified Copy—Menard County.**—The recitals in the title of the defendant showed a chain of title under the grantee, A. Burrell, reciting links of the title; the admission of a certified copy of a deed from Burrell so recited does not make it necessary to pass upon its effect when certified as a copy "of Menard County records, now Tyler County records," and to determine the legal custodian of the records of the territory then called Menard County.

8. **Charge when no Conflict in the Evidence.** — The testimony for plaintiffs showed the grant to Burrell, his deed to Bevil, and parol testimony to the heirship, etc., of the plaintiffs. Not contradicted, it was not error in the charge that it assumed that the plaintiffs had shown title.

9. **Boundaries.**—The issues of the cause did not develop a necessity to submit the rules of law as to boundaries. The matter having been properly determined by the court upon the testimony there was no error in refusing to instruct the jury upon that question.

APPEAL from Hardin. Tried below before Hon. J. G. Minter, Special District Judge.

The opinion gives a statement.

*West & Chester,* for appellant.—1. The court erred in overruling appellant's general demurrer to plaintiffs' petition, because the plaintiffs allege that the original grant to A. A. Burrell located the land at one place without any ambiguity in the description contained in said grant, and alleged said land to be at another and different place, and alleged that the timber was cut at such other place; and because the pretended description of the land as they allege it to be located on the ground is wholly unintelligible and embraces no land whatever; and because to place the land where they claim it to be would entirely ignore all the calls contained in the grant.

Plaintiffs having alleged the description of the land as contained in the grant, and same being free from ambiguity, it is not permissible for them to locate the land at another place, wholly ignoring all the calls in the grant, as they sought to do. Anderson v. Stamps, 19 Texas, 465; Schaeffer v. Berry, 62 Texas, 714.

2.   The plaintiffs alleged that the calls contained in the original grant placed the land at one locality, but that it was situated at a different place, and that the timber was cut at such different place, their description of such other and different place being wholly ambiguous and insufficient; therefore the court erred in overruling defendant's general demurrer.   Shipman v. Fulcrod, 42 Texas, 249; Gammage v. Alexander, 14 Texas, 418; Sayles' Civ. Stats., art. 1182.

3.   The court erred in overruling appellant's special exceptions to plaintiffs' petition, presenting the defenses of laches, stale demand, and limitation, plaintiffs alleging that the original grant placed the land at one place, and that it was in fact at another place, and sought to recover damages for timber cut at such different place, said grant being dated September, 1835, and suit brought in 1888.   Sayles' Civ. Stats., arts. 3207–3209; Parker v. Spencer, 61 Texas, 155; Hudson v. Jurnigan, 39 Texas, 585; Flemming v. Reid, 37 Texas, 152; Barrett v. Kelly, 31 Texas, 480.

4.   The court erred in overruling defendant's motion to suppress the depositions of witness McIntosh.   Sayles' Civ. Stats., arts. 2219, 2225, 2226; Garner v. Cutler, 28 Texas, 175; Hagerty v. Scott, 10 Texas, 531; Bracken v. Neil, 15 Texas, 114.

5.   The county clerk of Liberty County is the legal custodian of the land records of the old judicial county of Menard.   See act validating records of the judicial county of Menard and making the county clerk of Liberty County the legal custodian thereof.   1 Sayles' Early Laws, p. 533.

6.   A copy of a deed from the records of Menard County, made by Heard, clerk of Tyler County, would not be admissible in evidence, he not being the legal custodian thereof.   1 Greenl. on Ev., secs. 483–485.

7.   The court erred in admitting in evidence over defendant's objections and exceptions the original English field notes of the A. A. Burrell league, because same is fatally variant from the description thereof contained in plaintiffs' petition.

8.   The court erred in its charge to the jury, in this: It wholly failed to submit the issues of the locality of the land and of the cutting to the jury, and to instruct them that unless the land was at the place on the ground which plaintiffs (appellees) alleged it to be located, and further that unless the timber was cut from such place where they alleged the land to be, they must find for defendant (appellant), the appellant having asked a special charge presenting those issues.   Shipman v. Fulcrod, 42 Texas, 249; Gammage v. Alexander, 14 Texas, 418; Pasch. Dig., art. 1846; 2 Greenl. on Ev., 11, 15, 160; 1 Greenl. on Ev., 58; Parker v. Beaver, 19 Texas, 410; Sayles' Civ. Stats., art. 1317, and note; Cannon v. Cannon, 66 Texas, 682; Railway v. Meadows, 73 Texas, 32; Railway v. Schofield, 72 Texas, 496; Ponton v. Ballard, 24 Texas, 621; Chandler v. Fulton, 10 Texas, 22; Spence v. Onstott, 3 Texas, 147.

9.   The court erred in wholly failing to give in charge to the jury
the rules of law by resort to which the boundaries of land are ascer-
tained and determined, and in refusing appellant's special charge,
stating such rules and instructing the jury to be governed thereby. Wel-
der v. Carroll, 29 Texas, 329; Booth v. Strippleman, 26 Texas, 441;
McCown v. Hill, 26 Texas, 361; Stafford v. King, 30 Texas, 271.

*P. A. Work, O'Brien & O'Brien,* and *S. B. Cooper,* for appellees.—
1.   It was permissible for plaintiffs, under the allegations of their peti-
tion, to show that the call in the original title for the northwest corner
of the Ellery survey was erroneous; that the northwest corner of the
Brooks survey was meant, and that the A. A. Burrell survey was in
fact on the ground situate west of the Brooks instead of the Ellery sur-
vey.   Early v. Sterrett, 18 Texas, 116; Berry v. Wright, 14 Texas, 273;
Camley v. Stanfield, 10 Texas, 550; Bass v. Mitchell, 22 Texas, 294;
Urquhart v. Burleson, 6 Texas, 502; Bolton v. Lann, 16 Texas, 96;
Booth v. Strippleman, 26 Texas, 436; George v. Thomas, 16 Texas, 74;
Davis v. Smith, 61 Texas, 21; Barnard v. Good, 44 Texas, 638; Huff
v. Webb, 64 Texas, 286; Cook v. Dennis, 61 Texas, 246; Smith v.
Chatham, 14 Texas, 322; Hughes v. Sandal, 25 Texas, 162; Duren v.
Presbony, 25 Texas, 517; Jones v. Burgett, 46 Texas, 284; Croft v.
Rains, 10 Texas, 520.

2.   The court did not err in overruling appellant's special excep-
tions to plaintiffs' petition as to limitation, laches, and stale demand,
etc.   Williams v. Conger, 49 Texas, 583; Mast v. Tibbles, 60 Texas, 301;
Moss v. Berry, 53 Texas, 632.

3.   This action being by joint tenants against a joint tenant reciproc-
cally for their part of joint money received by them respectively, and
not one of *quare clausum fregit,* as stated by him, it is not imperative
that all of the joint tenants should join in the suit; and in the event
that the court should determine that the McIntosh heirs are not proved
and can not recover without being joined herein, appellees yet ask that
the judgment be affirmed and apportioned as to them and remitted as
to the McIntosh heirs.   Telfener v. Dillard, 70 Texas, 139; 2 Bouv.
Law Dic., 712; Story's Eq. Jur., 1075, 1077; Cool. on Torts, 327; Hib-
bard v. Foster, 24 Vt., 542; Bigelow v. Rising, 42 Vt., 678; Longfellow v.
Quimby, 29 Me., 196; Wilson v. Gamble, 9 N. H., 74; Webber v. Merrill,
34 N. H., 202; Jones v. Lowell, 35 Me., 538; Jackson v. Todd, 1 Dutch-
er, 121; McGill v. Ash, 7 Pa. St., 397; 2 Waterman on Trespass, 945.

4.   The court did not err in admitting in evidence the certified copy
made by the clerk of Tyler County, from the records of formerly Menard
County, of the deed from A. A. Burrell to John Bevil, dated Novem-
ber 16, 1839.   See "An act to organize a part of Liberty County for
judicial and other purposes," Sayles' Early Laws, p. —; and that the
records of Menard District were validated by an act of 1844, 1 Sayles'

Early Laws, 533; also the "Act creating Tyler County," etc., Sayles' Early Laws; Sayles' Civ. Stats., art. 674; 1 Greenl. on Ev., 97.

5.   The court did not err in refusing to submit the issues of locality of the land and of the cutting to the jury.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover the value of trees charged to have been cut and removed by the appellant from the A. A. Burrell league of land, lying in Hardin County.   Appellees owned an undivided three-fourths interest in said league and the appellant owned the remaining one-fourth interest.

Plaintiffs in their petition made the following allegations with regard to the description and situation of the said league of land:

"The said league is described in the grant, of date September 2, 1835, to said Burrell as follows, to-wit:   'The tract surveyed for the colonist A. A. Burrell is situated at the northwestern corner of Joseph Ellery's survey, on the western side of the Neches, for the first corner of the league of land of the party interested; thence west 10,000 varas were measured and a stake was set for the second corner, which is also the northwest corner of this survey; thence 2500 varas were measured and the third corner was formed, which is also the southwest corner of this same survey; thence east 10,000 varas were measured and a stake was set for the fourth and last corner of this survey; thence north 2400 varas were measured to intersect the beginning corner;' that the call for the northwest corner of the Ellery survey as the beginning corner of the Burrell league and the call stating the length of the east line of Burrell to be 2400 varas are mistaken and erroneous, and that both of said calls as contained in said original grant are corrected by the description contained in the original English field notes, which they allege are as follows, to-wit:   'Commenced at the northwest corner of George W. Brooks' survey about six miles west of the Neches River for the beginning corner of *sitio* of land for A. A. Burrell; thence west 10,000 varas and set post at the northwest corner of this survey; thence south 2500 varas and set post at the fourth and southwest corner of a survey belonging to ———; thence north 2500 varas along the line of said survey to the place of beginning.' "   And plaintiffs further alleged that said survey was actually made adjoining and west of said Brooks survey, and has always heretofore and still so appears on the official maps of Tyler and Hardin counties, and that the trees that were cut by the defendant were taken from within the boundaries last above described.

Appellant complains that "the court erred in overruling appellant's general demurrer to plaintiffs' petition, because the plaintiffs alleged that the original grant to A. A. Burrell located the land at one place without any ambiguity in the description contained in said grant, and alleged said land to be at another and different place, and alleged that the timber was cut at such other place, and because the pretended de-

scription of the land as they allege it to be located on the grounds is wholly unintelligible and embraces no land whatever, and because to place the land where they claim it to be would entirely ignore all the calls contained in the grant, their description of such other place being wholly ambiguous and insufficient;" and also that "the court erred in admitting in evidence over defendant's objections and exceptions the original English field notes of the A. A. Burrell league, because same is fatally variant from the description thereof contained in plaintiffs' petition;" and upon the same issue he complains that "the court erred in its charge to the jury in this: It wholly failed to submit the issues of the locality of the land and of the cutting to the jury, and to instruct them that unless the land was at the place on the ground where plaintiffs alleged it to be located, and further that unless the timber was cut from such place where they alleged the land to be, they must find for defendant, the appellant having asked a special charge presenting those issues."

The title to Burrell was dated on the 2d day of September, 1835, and is in the usual form of grants of that date to colonists.

The decree for title was dated August 18, 1835, and directed the "Surveyor Citizen D. Brown" to "cause a tract of land designated by the party interested to be surveyed," and that he "examine the field notes which shall be translated in this office."

The record contains à translation from the Spanish of the title, which corresponds with plaintiffs' allegations above referred to. The field notes are signed by David Brown, surveyor, and by Jos Carrierere, translator, and dated the 27th day of August, 1835. The field notes are not repeated in the body of the title, signed by the commissioner, but are there referred to in the following language: "The boundaries whereof are described on the map and field notes returned by the surveyor David Brown, as appears in these proceedings."

The plaintiffs, in connection with the Land Office translation of the title, introduced what the Commissioner of the General Land Office certified to be "a true copy of the original English field notes existing in the archives of this office," reading as follows:

"Commencing at the northwest corner of George W. Brooks' survey, about six miles west of the Neches River, for the beginning corner of *sitio* of land for A. A. Burrell; thence west 10,000 varas and set post at the northwest corner of this survey; thence south 2500 varas and set post at the third and southwest corner of this survey; thence east 10,000 varas and set post at the fourth and southwest corner of survey belonging to ———; thence north 2500 varas along the line of said survey to the place of beginning." Dated August 27, 1835, and signed "David Brown, surveyor."

The G. W. Brooks survey lies immediately north of the Joseph Ellery survey, and the Burrell, when located by the call for the Brooks,

lies immediately north of where it would be if located by the call for the Ellery survey, and is wholly different land.

It was proved that the maps of Hardin and Tyler counties have always shown the Brooks to be the beginning corner of the Burrell, and that it is so reputed in the neighborhood. No evidence to the contrary was offered.

There can be no doubt about what are called the English field notes being the original ones made by the surveyor and the ones upon which the title was issued. They were returned as evidence of the boundaries of the tract of land surveyed for the colonist, and have been preserved as an archive with and as part of the original title. There is every reason for believing that in translating them a mistake was made with regard to the beginning corner. It is plain that a mistake was then made with regard to the length of one of the lines. The English field notes being the original, and being preserved along with the Spanish copy of them as an archive, and the title not itself containing the field notes but referring in that respect to the report of the surveyor, we think it was proper to treat them as part of the title and not as extraneous evidence changing or contradicting it.

We do not regard the evidence as being introduced for the purpose of correcting a mistake in the title and changing it from one tract of land to another, which could not be done without other parties than were before the court, nor under the allegations made. Treating them as inconsistent calls and both as part of the grant, it was proper to allege in the petition which was the correct call and to introduce evidence to sustain the pleading. It is evident that in the pleading one of the calls of the English field notes was omitted by inadvertence. The petition was not subject to general demurrer on that ground. If the last call in the pleading is reversed, as is always proper in a survey, the description of the land will be evident. The pleading was not misleading. For the same reason the only objection urged to the introduction of the field notes as evidence being "because they were fatally variant from the description thereof contained in plaintiffs' petition," was properly overruled.

The only description given by the evidence of the locality at which the defendant cut and appropriated the trees was that it was done on the "A. Burrell league, in Hardin County." If to ascertain the true location of the land when there is doubt about it it is proper to resort to original field notes made by the surveyor, as we think it was under the circumstances of this case, and as in addition to them the plaintiffs introduced without objection the county map and some parol evidence to support their allegation, and the defendant none to the contrary, it was established for the purpose of this suit that the Burrell league was situated at the place where plaintiffs charged the trees were taken from. It was for the court and not for the jury to determine the relative value

of the original English field notes and the Spanish copy of them, and as there was no conflict in the parol evidence introduced to show the true locality of the land, we do not think the court erred in giving the charge it did, or in refusing to give the charges requested by appellant on the theory that there was conflicting evidence before the jury.

The plaintiffs filed interrogatories to and gave notice of their purpose to take the deposition of a witness who was correctly stated in the notice to reside in Wood County, Texas. A commission to take the deposition was issued by the clerk, which was correct in every particular except that it was addressed to officers of Hardin County instead of to Wood County. The deposition was taken and returned by the clerk of the District Court of Wood County. The defendant made a motion in due time to suppress the deposition because of the error in the address of the commission. The court permitted the commission to be amended and overruled the motion.

It has been repeatedly said that it is within the discretion of the District Court to permit amendments of its process, and that its action in that respect will not be revised by this court. Kavanaugh v. Brown, 1 Texas, 481; Austin & Clapp v. Jordan, 5 Texas, 130; Porter v. Miller, 7 Texas, 468; Andrews v. Ennis, 16 Texas, 45; Chapman v. Allen, 15 Texas, 278; Cartwright v. Chobert, 3 Texas, 261.

As the residence of the witness was correctly stated in the notice the amendment could be made by the record, and it is not apparent that the defendant was prejudiced or misled in any respect. We are of the opinion that the amendment was properly allowed.

We do not think that the defense of laches was applicable to the case, and we find no error in the action of the court in overruling a demurrer to the petition on that ground.

Plaintiffs over the objections of the defendant read in evidence a certified copy of a deed from A. A. Burrell to John Bevil, made by the clerk of the County Court of Tyler County, and purporting to be taken by him from the records of Menard County, the clerk including in his certificate a statement that it was a copy "of Menard County Records, now Tyler County Records." The appellees derived their title by descent from John Bevil and his wife.

As was shown by his deed, read in evidence by the plaintiffs, the defendant's undivided interest in the land was conveyed to him by John Bevil, the deed reciting that the land conveyed was part of the A. A. Burrell league, "being the same league of land conveyed by A. A. Burrell, the original grantee, to my father John Bevil, by his deed bearing date the 16th day of November, A. D. 1839, and recorded in Book B, page 25, Menard County Records, now Tyler County, Texas."

In view of these recitals as to the source of his own title and of the title of John Bevil, the ancestor of appellees, it became unnecessary for the plaintiffs to introduce other testimony on that issue, and we there-

fore deem it unnecessary to decide the question raised with regard to the Menard records. Polk v. Chaison, 72 Texas, 500; Chamblee v. Tarbox, 27 Texas, 139.

As the evidence shows that the title of Burrell, the original grantee of the land, was conveyed to John Bevil and became the community property of him and his wife, and that appellees held their title by descent from them, about which there was no controversy, there was no error in the charge of the court instructing the jury that "plaintiffs having established their relationship to the ancestor under whom they claim, establishes their title and entitles them to recover the land they claim in their petition." The charge was correct as applied to the undisputed evidence. The court had, in another part of the charge, sufficiently instructed the jury that it was the value of the timber taken by the defendant and not the land itself that was in controversy.

The issues in the cause did not require the court to charge upon the rules relating to boundaries, and there was no error committed by refusing to give the charges requested by the defendant on that subject.

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered March 24, 1891.