## HENRY WILKINS ET AL. v. J. A. CLAWSON ET AL.

### Decided November 15, 1904.

**1.—Boundaries—Locative Call—Ambiguity.**

The field notes of a survey called to begin on the north line of the N. survey and to cross a bayou at 3008 varas N. 80 E. therefrom; the N. survey extended only 1169 varas S. 80 W. from the bayou; how such ambiguity could be explained and the beginning corner located was a question of fact for the jury depending on the whole evidence; and it was error to charge the jury that they must locate the beginning corner in the north line of the N. survey within 1169 varas west of the bayou.

**2.—Same—Locative and Subordinate Calls.**

A call for a beginning corner in the north line of another survey which can be located with certainty, though locative in the sense that it ties the two surveys together, does not necessarily render subordinate a call for course and distance east therefrom to a natural landmark which would give a beginning point west of the north line of the survey called for.

**3.—Field Notes—Translation—Archives.**

The original English field notes and the map prepared by the surveyor who located the survey are a part of the original title and may be considered, together with the translated field notes embodied in the grant, for the purpose of identifying and fixing the location of the survey.

**4.—Estoppel—General Verdict.**

A general verdict for all the defendants can not be held to find in favor of one of them on an issue of estoppel pleaded by him alone and which the evidence could not be held, as matter of law, to have conclusively established.

Appeal from the District Court of Harris.  Tried below before Hon. W. P. Hamblen.

*J. W. Campbell,* for appellants.

*G. H. Pendarvis,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by plaintiff in error against the defendants in error to recover a portion of the Hugh Morgan survey, which survey is

alleged in the petition to be situated partly in Harris and partly in Liberty County. The only issue in the case is as to the true location of the Morgan survey.

Plaintiff claims that the southwest corner of this survey is at a point S. 80 W. 3008 varas from the intersection of the west bank of Cedar Bayou with the north line of the Hannah Nash survey, and that the west lines of the Morgan runs from said point N. 10 W. 5036 varas.

The defendants claim that the southwest corner of the Morgan is at the intersection of the north line of the Hannah Nash survey and the west bank of Cedar Bayou, and that the west line of the Morgan runs from said point on the west bank of the bayou N. 10 W. 5000 varas.

The land claimed by plaintiff is thus described by metes and bounds in his petition: "Beginning at a stake in the prairie near fence, which stake is painted white and marked N. W. H. M. on one side and marked S. W. L. L. on the other side, and is the northwest corner of the Hugh Morgan league, and the southwest corner of the L. Latham original survey; thence north 80 degrees east, on the north line of the Hugh Morgan league (which is the south line of the L. Latham survey), 5000 varas to a stake in the prairie near corner of fence, the northeast corner of the Hugh Morgan league (crossing Cedar Bayou at about 3100 varas); thence south 10 degrees east, on the east line of said Hugh Morgan league, 3626 varas to a stake in said line, 1374 varas from the southeast corner of said league; thence south 80 degrees west, parallel with the south line of said league, 5000 varas to the west line of said league, a stake for corner, 1374 varas from southwest corner of said league; thence north 10 degrees west, with the west line of said league to the place of beginning, containing 3211 acres of land."

That portion of the land described in the petition lying between the west line of the Morgan as claimed by plaintiff and said line as claimed by the defendants is covered by surveys junior in location to the Morgan, and defendants have title to the several portions of said junior surveys claimed by them respectively if said surveys are not located within the boundaries of the Morgan grant.

Plaintiff has title to all of the land described in his petition which is within the boundaries of the Morgan grant, except several small tracts to which it is admitted some of the defendants have title by limitation.

The trial in the court below resulted in a verdict and judgment in favor of the defendants for all of the land claimed by them, and plaintiff recovered only that portion of the land described in his petition to which defendants disclaimed title.

The plaintiff put in evidence upon the trial a certified translated copy of the original grant of one league of land to Hugh Morgan. The grant is to Hugh Morgan as a colonist under Joseph Vehlein, and is dated May 20, 1835. The decree instructs the surveyor "Citizen Arthur Henri" to cause a survey to be made of the league of land that Morgan may point out, provided it be entirely vacant; and further directs that he examine the field notes which are to be translated.

The description of the land and the field notes as translated from the grant are as follows: "The tract surveyed to the colonist Hugh

Morgan begins in the north line of the survey of Mrs. Nash's, west of Cedar Bayou, the first corner of this survey was formed in the above mentioned line raising a mound of earth around a stake, from which to the north 80 degrees east there were measured 5000 varas, and the second 'corner was formed in a prairie, a mound of earth around a stake, from which on the course to the north 10 degrees west there were measured 5000 varas, and the third corner was formed in a prairie, a mound of earth around a stake, from which on the course to the south 80 degrees west there was measured 5000 varas, and the fourth and last corner was formed in a prairie, raising a mound of earth around a stake. From there to the south there were measured 4989.5 varas until closing on the beginning corner of this survey. Of the aforesaid tracts 6 labors belong to the class of arable land and the remaining 19 of that of pasture. Its configuration being that which in duplicate I inclose to you. Nacogdoches, August 30, 1835. (Signed) Arthur Henri, Surveyor; Joseph Carriere, Translator."

The title was formally extended on August 30, 1835, as follows: "In the name of the state, I concede to, confer upon and put aforesaid Hugh Morgan in real and personal possession of one league of land, situated on the north line of the Lady Sarah Nash's, west of Cedar Bayou, whose boundaries are defined in the map and notes of survey returned by the surveyor, Citizen Arthur Henri, as is seen in this title."

In connection with this grant plaintiff introduced a certified copy of the original English field notes upon which the grant was extended and which were required to be translated into Spanish and embodied in the grant. Plaintiff also introduced a certified copy of the map or plat of the Hugh Morgan survey made by Arthur Henri for the purpose of being attached to the title of said survey. The English field notes and the map above referred to are archives of the General Land Office and the copies introduced in evidence are properly certified. This map shows that the Morgan survey lies across a stream which runs from north to south entirely through the survey near its center. The English field notes are as follows:

"Field notes of a league of land surveyed for Hugh Morgan on Cedar Bayou. Beginning on the west side of Cedar Bayou, and on the north line of a league survey for Mrs. Nash, mound and stake; thence with said line north 80 east, 500 varas:

"3008 varas across Cedar Bayou at the edge of the prairie, the bayou is 11 varas wide, bears S. 9 E.;

"5000 varas mound in the prairie; thence N. 10 W.;

"5000 varas mound in the prairie; thence S. 80 W.;

"980 varas to the timber;

"1880 varas Cedar Bayou 8 varas wide, bears S. 20 W.;

"3400 varas prairie;

"5000 varas mound in the prairie, 4th corner, oak, cedar, ash and pine timber. Undergrowth, Spanish mulberry and palmetto. Land sterile. Thence on random line S. 10 E.;

"4989.5 varas to the place of beginning, containing one league of about six labors of farming and the balance pasture land.

"August 1, 1835. S. C. Hiroms. Notes sent."

The location of the Hannah Nash survey is not questioned. The northwest corner of that survey is in the prairie and unmarked, but as fixed by calls for course and distance is S. 80 W. 1169 varas from the west bank of Cedar Bayou. The north line of said survey runs from said corner N. 80 30 W. 7575 varas.

As a circumstance tending to show the true location of the Hugh Morgan survey plaintiff also introduced in evidence the field notes of a survey made for L. Latham a few weeks after the Morgan survey was made. These surveys were made by the same surveyor and the field notes of the Latham call for the northwest corner of the Morgan survey as the beginning corner of the Latham and fix said corner at the point claimed by plaintiff as its true location. P. Whitty, a surveyor of Harris County, testified for plaintiff that he had made a survey of the Hugh Morgan league and had located said survey as it was claimed by plaintiff, and that in making said survey he found old marked lines corresponding with the east and north lines of the Morgan survey as claimed by plaintiff. In running the north line of the Morgan from its northeast corner he crossed Cedar Bayou at 2592 varas instead of 1880 as called for in the original field notes. He found, however, a slough at 2376 varas from said northeast corner which might have been taken for Cedar Bayou. This bayou, which is the dividing line between Liberty and Harris Counties, has timber on both sides, and where it crosses the north line of the Hannah Nash survey is a considerable stream not fordable in many places.

It is unnecessary to set out the evidence introduced by the defendants, it being sufficient to say that it tended to show that the Morgan survey was located as claimed by them, beginning on the west bank of Cedar Bayou in the north line of the Hannah Nash.

Such being the state of the evidence, the trial court instructed the jury "that in determining the location of the boundary of the Hugh Morgan you must locate the beginning corner of the said Morgan survey on the north line of the Hannah Nash survey within 1169 varas west of Cedar Bayou."

This instruction was in effect a charge to find for the defendants, as it took from the jury the right to determine whether the evidence offered by plaintiff was sufficient to establish his claim that the beginning corner of the Morgan survey was 3008 varas S. 80 W. from the intersection of the north line of the Nash survey with the west bank of Cedar Bayou, and there was no evidence tending to show that said corner was located at any point in the north line of the Nash other than on the west bank of Cedar Bayou.

Defendants in error contend that this instruction was properly given: (1) Because there is no ambiguity in the description of the survey contained in the grant and it is therefore not permissible to show by extrinsic evidence that different land from that described was intended to be granted; and (2) that the call for the survey to begin in the north line of the Nash is a locative call and controls the call for distance to Cedar Bayou, which is a mere incidental passing call.

Neither of these contentions is sound. If the translation of the original field notes which appear in the body of the grant be alone consid-

ered the grant should probably be held void for insufficiency of description, since there is nothing in these field notes from which any corner of the grant can be fixed or identified. They only describe an area 5000 varas square having its south line along the north line of the Nash survey, which line is 7575 varas in length, and give no data by which any corner of the survey can be definitely located. The statement that the survey begins at a point in the north line of the Nash west of Cedar Bayou is not sufficiently definite when the facts show that the north line of the Nash extends for a distance of 1169 varas west of said bayou.

But we must not look alone to these field notes in determining the sufficiency of the description. The original English field notes and the plat or map prepared by the surveyor who located the survey are a part of the original title and must be considered together with the field notes embodied in the grant for the purpose of identifying and fixing the location of the survey. Welder v. Carroll, 29 Texas, 331; Cook v. Dennis, 61 Texas, 248; Irvin v. Bevil, 80 Texas, 338.

There is ambiguity in the original field notes when they are applied to the land upon which the survey was located. It is shown by the undisputed evidence that if the beginning corner of the survey is 3008 varas west of Cedar Bayou said corner is not in the north line of the Nash survey, as that line only extends 1169 varas west of the bayou. If the beginning corner is as claimed by the defendants in the north line of the Nash on the west bank of the bayou, the north line of the survey does not cross the bayou as it is called to do in the field notes. This ambiguity existing, it is for the jury to determine from all the evidence where the survey was actually located; in other words to discover, if possible, and follow the footsteps of the surveyor who made the original survey.

The cases of Lubbock v. Binns, 20 Texas Civ. App., 407; Anderson v. Stamps, 19 Texas, 460; and Jamison v. Land Company, 77 S. W. Rep., 969, cited by defendants in error in support of their first contention, are not applicable. In none of these cases was there any ambiguity in the description contained in the patent, and therefore the general rule was applied that extrinsic evidence was not admissible to change the description contained in the grant.

The call for the beginning corner of the Morgan in the north line of the Nash is of no greater dignity than other calls in the field notes. It may be that the call for the north line of the Nash is locative in the sense that it ties the Morgan survey to the Nash, and an incidental call for course or distance which would separate the two surveys would be subordinate to the call for the Nash line, but the call for the beginning corner in that line should not, in view of the ambiguity raised by the other calls in the field notes, be held conclusive.

. The evidence upon the issue of estoppel pleaded by one of the defendants does not authorize our holding as a matter of law that the plea should be sustained. The verdict being a general one for all of the defendants, we can not tell whether the jury found the facts necessary to sustain the plea of estoppel.

The judgment of the court below is undisturbed as to that portion

of the land adjudged to the several defendants on their pleas of limitation and that portion awarded plaintiff on the disclaimer of defendants. As to the remainder of the land in controversy the judgment will be reversed and the cause remanded.

*Reversed and remanded.*