BARROW et al. v. MURRAY et al.
(No. 7573.)

(Court of Civil Appeals of Texas. Galveston.
March 5, 1919. Rehearing Denied
April 3, 1919.)

1. Boundaries ⬥⟾35(3), 36(3, 5) — Field
Notes — Ambiguity — Admission of Other
Evidence.

In suit involving question whether there
is a vacancy between two leagues on the west
and a survey on the east to which plaintiffs
are entitled by an award from the state, *held*
that, when an attempt was made to locate the
boundaries of the leagues on the ground by the
field notes in the grant, and an ambiguity ap-
peared, court did not err in admitting original
English field notes, maps, plats, and field notes
of adjoining grants, and evidence of surveyors
as to the true location of the east boundary
line of the leagues.

2. Boundaries ⬥⟾6—Tracing Footsteps of
Surveyor—Point of Beginning.

Contention that to trace the footsteps of the
original or locating surveyor one must begin at
the corner at which he began, or the point
ascertained to be approximately near said cor-
ner, rather than at a well established and
known corner of an adjoining survey called for
by the locating surveyor in fixing the boundaries
in question, is untenable.

3. Boundaries ⬥⟾36(3, 5) — Original Eng-
lish Field Notes and Maps—Admissibil-
ity.

The original English field notes and maps
prepared by the surveyor to locate surveys are
part of the original title, and may be consider-
ed in aid of description contained in the grant,
and to supply what is omitted therefrom.

4. Boundaries ⬥⟾37(3) — Evidence — Suffi-
ciency.

In suit involving question whether there is
a vacancy between two leagues on the west and
a survey on the east to which plaintiffs are en-
titled by an award from the state, evidence *held*
to justify court's finding that the east boundary
line of leagues was at the place contended for
by appellees claiming adversely to plaintiffs.

Appeal from District Court, Brazoria Coun-
ty; Samuel J. Styles, Judge.

Cause consolidating cases styled respective-
ly Minnie F. Lawson v. Emma M. Murray,
Norton v. Barrow and Others, and Murray v.
Barrow, in which consolidated case R. H.
Barrow and wife became plaintiffs, and all
the other parties joined adversely to them.
Judgment contrary to contention of plain-
tiffs, and they appeal. Affirmed.

Maco & Minor Stewart and R. W. Houk,
all of Houston, for appellants.

J. T. Loggins, W. S. Sproles, Munson &
Williams, and Elmer P. Stockwell, all of An-
gleton, for appellees.

LANE, J. ˙This is an appeal from a judg-
ment of the district court of Brazoria county
in a cause consolidating cases Nos. 9820,
10336, and 10954, styled, respectively, Minnie
F. Lawson v. Emma M. Murray, Norton v.
Barrow et al., and Murray v. Barrow, in
which said consolidated case R. H. Barrow
and wife became plaintiffs and are so recog-
nized by all the parties to this appeal, but for
some reason referred to in the briefs of all
parties as defendants. All other parties, ap-
pellees, join adversely to the Barrows. We
shall refer to the two sets of parties as the
Barrows and appellees, respectively.

On the 7th day of July, 1824, a league of
land on the east bank of the Brazos river
in Brazoria county was granted to James B.
Bailey. It was surveyed by Horatio Chris-
man, under the direction of the Commission-
ers Baron de Bastrop and Empressario Ste-
phen F. Austin, and described as follows:

"Beginning on the east bank of the Brazos
river at a stake from which an elm 8 in. dia.
brs. N. 51° E. 5 bars, a do. 4 in. dia. brs. 8 60°
E. 3 bars, marked $^{J.\ B.\ B.}_{N\ L}$; thence east 4,566
bars to a post; thence south 3,700 bars to a
post, pecan bears N. 41° W. 5½ bars, marked
$^{J.\ B.\ B.}_{S\ L}$; thence west at 8,968 bars, intersected
Samuel Carter's beginning corner on the river;
thence up the river with the meanders thereof
to the place of beginning, comprehending in
these limits one league of land."

The field notes of the north line of the
Stephen F. Austin survey, made at the same
time, which survey was later abandoned,
were as follows:

"Commencing at the N. E. corner of J. B. Bail-
ey's tract in the prairie; thence east 700 B.
to the timber, 3,570 a lake, 263 B. wide, 5,130
a creek 50 L. wide, running S. W. 6,970 prairie,
7,083 to a cluster of live oaks marked, the
south one of them, S. F. A.; thence S. 25° E.
900 B.; thence S. 21° W. 7,820 B. to the first-
mentioned post in the prairie."

On the 8th day of July, 1824, the same sur-
veyor surveyed a league of land under the di-
rection of the same authorities, which was
granted to William Roberts, described as fol-
lows:

"Beginning on the east bank of the Brazos
river at an elm marked 1 E. R.; thence east
14,224 bars to corner a post and mount; thence
south 1,961 bars to a stake; thence west 1,095
bars to a stake the N. E. corner of Stephen
F. Austin's tract; thence west 11,625 bars to
stake at Bailey's upper corner; thence up the
river with the meanders thereof to the place of
beginning, comprehending in all one league of
land."

The original English field notes of the Wil-
liam Roberts league by Surveyor Dixon, on
file in the land office, describes the same sub-
stantially as follows:

"Beginning at an elm marked No. 1 E. R. on the east bank of the Brazos river; thence east between leagues Nos. 1 and 2 (No. 1 being the Wm. Roberts and No. 2 the Bradley) at 970 bars a creek, 2,790 a prairie, 3,000 bottom, 3,200 prairie, 3,450 timber, 5,370 prairie, 5,660 timber, 8,220 a lake, 9,600 a bayou, 11,070 a lake, 11,630 a creek, 13,660 prairie, 14,244 set a post and raised a mount; thence south 1,961 bars set a post and raised a mound; thence west 1,095 bars to the N. E. corner of S. F. Austin's tract on the standard line."

The field notes in the grant to William Roberts are as follows:

"The surveyor commenced the survey of said league at a point on the eastern margin of the Brazos river, where a landmark was set at the side of an elm marked 1 E. R.; thence he measured 14,244 varas east where another landmark was set in the prairie; thence south 1,961 varas where a landmark was set in the prairie; thence west 12,720 varas to the said river at the landmark where the survey of the adjoining owner, James Bailey's, league was begun; thence following the meanders of the river upwards to where the first line began."

The field notes of the John Bradley league made by Horatio Chrisman, which was granted to Bradley August 10, 1824, are as follows:

"Beginning on the east bank of the Brazos river at a post from which a pecan 20 in. dia. brs. N. 7° E. 4 bars, marked No. 3 E. R. a do. 14 in. dia. brs. S. 65° E. 5 bars, marked 2 E. R.; thence east 10,394 bars to a mound in the prairie; thence south 2,000 bars to a mound in the prairie; thence west 13,200 bars intersected the Brazos river at the upper corner of William Roberts league; thence up the river with the meanders thereof to the place of beginning, comprehending in these limits one league of land surveyed by me, Horatio Chrisman."

A labor of land granted to Andrew Roberts April 10, 1838, is described as follows:

"Beginning at the northeast corner of C. Smith's league; thence east 1,000 varas to a stake and mound; thence north 1,000 varas to a stake and mound; thence west 1,000 varas to a stake and mound; thence south 1,000 varas to the beginning—containing in the above-described boundary one labor of land."

The southwest corner of this labor is shown by all the old maps introduced in evidence to be the southeast corner of the William Roberts league, and its west line is a part of the east line of the William Roberts league.

A tract of 4,605 acres of land was granted to the assignees of Jose de Jesus Valderas in 1873, and in the original grant is described as follows:

"Beginning at the S. W. corner of a tract surveyed by virtue of certificate to J. W. Cloud a post and mound on the back line of the George Robinson league; thence south 1,044 vs. to a post and mound in the prairie, the S. E. corner of sd. league; thence west 2,006 vs. to the N. E. corner of the John Bradley league a post in the prairie; thence south 2,000 vs. J. Bradley's S. E. corner the upper line of the Wm. Roberts league; thence with sd. upper line east 1,024 vs. to the N. E. corner of sd. league; thence south 961 vs. to the N. W. corner of the A. Roberts labor; thence with line of sd. labor east 1,000 vs. to post; thence south 1,016 vs. to the N. W. corner of the H. H. Cornwall tract; thence east 4,172½ vs. to a post and mound in the prairie; thence north 5,022 vs. to a post and mound for N. E. corner on the lower line of the said Cloud tract; thence with sd. lower line west 4,201 vs. to place of beginning."

On the 11th day of November, 1892, the parties owning any parts of the land contiguous to the boundary line between the Wm. Roberts and the Valderas surveys, entered into the following agreement:

"Whereas, there is an uncertainty as to the correct boundary line of the Wm. Roberts league and the A. Roberts labor on the west and the Jose de Jesus Valderas sur. on the east, the parties whose names are signed to this instrument and who are all the persons who at this time are the owners in fee simple of said tracts of land above named, for the purpose of advertising and settling said boundary lines and fixing the same on the ground forever so that it may be binding on them, their heirs, assigns, and legal representatives, forever, do now establish, fix, and declare said lines to be as follows, viz.: Beginning at a live oak post set in the ground (about 8 inches square and 8 feet high), being the point herein recognized as the S. E. cor. of Wm. Roberts lea. the S. W. cor. of the A. Roberts labor, the N. E. cor. of the Cornelius Smith lea. and of the N. W. cor. of the Noel F. Roberts sur. from which a double live oak the south prong of which is 12 in. in diameter and marked $=$ on each side (very old marks) and the north prong of which is 14 in. in dia. standing on the east bank of a slough in the south line of the Wm. Roberts League bears due west (variation 8 deg. 20' east) 1,242.7 varas and a hackberry 10 in. in dia. marked $=$ (new bearing south 38 deg. 10' E. 86⁶/₁₀ vrs.); thence north (variation 7 deg. 59' E.) at 1,141⁶/₁₀ vrs. pass a mulberry post about 5 ft. high and 5 in. in dia. being the herein recognized N. W. cor. of A. Roberts labor at 1,746 vrs. pass a live oak post being the S. W. cor. of a tract of 50 acres, sold by Walter Phelps to S. J. Jamison and the N. W. cor. of a tract of 100 acres sold by said Phelps to Sloan Jamison at 2,109⁶/₁₀ vs. to an iron pipe 2 in. in dia. and 3 ft. long which stands along side of a live oak post about 5 feet high being the N. W. corner of the aforesaid S. J. Jamison 50-acre tract in the south line of a tract of 100 acres sold by said Phelps to Sam and Sloan Jamison, which iron pipe and post are recognized herein as being the N. E. cor. of the Wm. Roberts lea.; thence S. 88 deg. 37' W. 1,208⁹/₁₀ varas to a cedar stake alongside of which is an old cedar post marked S o E, cor. of J. B. ——— L. from which an umbrella-shaped live oak 12 in. in diameter bears N. 23 deg. W. 192⁴/₁₀ varas, and another live oak 4 in. in diameter bears S. 64 deg. W. 114¹/₁₀ varas, this last-described point being considered

and accepted by the parties hereto as the S. E. cor. of the Jno. Bradley league; the foregoing described line has been agreed upon by the parties hereto because of the fact that the beginning point, namely, the live oak post set in the ground and about 8 feet high has been recognized by the parties living in its vicinity and claimed by the owners of lands adjacent to said line above described for the past 40 years as the true and common corners of the A. Roberts labor, the Wm. Roberts lea., the Cornelius Smith lea., and the Noel F. Roberts sur."

On the 2d day of August, 1894, Ira H. Evans, president of the New York & Texas Land Company, made an affidavit as follows:

"The State of Texas, County of Travis.

"Before me, A. B. Langemann, a notary public in and for the county and state aforesaid, on this day personally appeared Ira H. Evans, president of the New York & Texas Land Company, Limited, who, being duly sworn, states upon oath that the Jose de Jesus Valderas survey in Brazoria county, patented to Sam'l. A. Maverick, assignee by patent No. 332 in volume 19, was conveyed to said land company by properly authenticated deeds, and said land company has not sold or alienated said survey, except some parts thereof which are wholly situated within the limits of the corrected survey of said land lately made by J. A. Donaldson, and now on file in the general land office of the state. Ira H. Evans, President New York & Texas Land Company Limited.

"Sworn to and subscribed before me this 2d day of August, A. D. 1894. A. B. Langemann, Notary Public, Travis County, Texas."

This affidavit was filed in the general land office of Texas as file 65, August 7, 1894. There was an indorsement on the wrapper of this affidavit as follows:

"Patent No. 332, vol. 19, returned and canceled on the record on account of conflict with old and valid surveys. August 8, 1894.

"W. L. McGoughey, Commissioner.

"Patented Aug. 30/94."

Presumably basing his action upon the before-mentioned agreement and affidavit, the state land commissioner in 1894 made and filed in the land office the following paper:

"The State of Texas, County of Brazoria.

"Corrected field notes of survey of 4,120$^{74}/_{100}$ acres of land made by virtue of a certificate issued by the district court of Bexar county to Samuel Maverick, assignee of Jose de Jesus Valderas on June 17, 1852, situated in Brazoria county east of the Brazos river about 11 miles N. 42 deg. E. of the town of Brazoria and beginning at iron pipe 2" in dia. set in an east line of the George Robinson league for the S. W. corner of the J. W. Cloud survey; thence south 1,007 vrs. to an iron pipe 3'x2" set at the S. E. corner of said Robinson league; thence West at 612½ vs. X the center line of the track of the Velasco Terminal Ry. 1,356 vs. to a pine post 4'x4" set for the N. E. corner of the James Bradley league; thence south 2,082 vs. to a cedar stake along side of which is an old cedar post marked 'S. E. cor. of J.

B. L.' from which an umbrella-shaped L. O. 12" in dia. bears N. 22 deg. 14' W. 172$^{4}/_{10}$ vs. and another L. O. 4" in dia. bears S. 64 deg. 46' W. 114$^{4}/_{10}$ vs. being the recognized S. E. corner of the James Bradley league; thence N. 87 deg. 51' E. 1209 vs. to an iron pipe 2" in dia. & 3 feet long standing alongside of a live oak post 5 feet high the N. E. corner of the Wm. Roberts league; thence S. O. deg. 46' W. 968 vs. to a mulberry post set at the N. W. corner of the A. Roberts labor; thence east 1,009 vs. to a post set at the N. E. corner of said labor; thence south 1,016 vs. to a post the N. W. corner of the H. H. Cornwall survey; thence S. 89 deg. 41' E. at 2,151 vs. X the center line of the Velasco Terminal Ry. 3,361 vs. to an iron pipe 3'x2" set for the S. E. corner of this survey; thence north 5,042½ vs. to an iron pipe 3'–2" for N. E. corner of this survey; thence N. 89 deg. 56' W. 4,209.3 vs. to the place of beginning.

"Resurveyed May 20th, 1894."

In April, 1910, Mrs. R. H. Barrow, contending that there was a vacancy between the Wm. Roberts and J. Bradley surveys on the west and the A. Roberts labor and the Valderas survey on the east, aggregating 800 acres of land which constituted state school land, caused the same to be surveyed, and thereafter procured from the state an award therefor, this being the land for which the Barrows sue in this cause, their claim being based upon said award.

The contention of appellees is that the Wm. Roberts league extends east to the west boundary line of the A. Roberts labor and the Valderas survey as agreed upon by the owners of the land on each side of said line in 1892, and that the Bradley league extends east to the west boundary line of the Valderas as established by said agreement in 1892. They contend that the line agreed upon was in fact the original east boundary line of the Wm. Roberts and Bradley leagues, and that the junior surveys (the A. Roberts and Valderas) west boundary line was not changed by the corrected field notes made in 1894, as both sets of field notes call for and establish the east line of the Wm. Roberts and Bradley as the west line of the A. Roberts and Valderas; in other words, both the original and corrected field notes call for the east lines of the Wm. Roberts and Bradley as the west line of the Valderas. The effect of this contention, of course, is that there is no vacancy lying between the Wm. Roberts and J. Bradley leagues on the west and the A. Roberts labor and Valderas survey on the east, as claimed by the Barrows, but that such land is part of the Wm. Roberts and J. Bradley leagues, and could not be lawfully awarded to Mrs. Barrow.

It is shown by the evidence that shortly after the original survey was made in 1824 by Dixon and Horatio Chrisman, upon which the original grant was issued to the J. Bradley league, the league was divided into the upper and lower halves by the same survey-

or, Horatio Chrisman, by running a line practically through the center of the league from west to east; that in making this survey Chrisman called for the south line of the Bradley to begin at its original S. W. corner on the river and run east 14,110 vs. to its N. E. corner. It is shown that in less than one year after Chrisman had made the original survey, and the survey dividing the league, he subdivided the south half of the league, and in surveying a tract for one James Frazier along the south line of said league he began at the original S. W. corner of the league and ran east 7,268 varas, and in surveying another tract out of the same half league, lying just east of the first tract, he ran along the south line 6,845 varas to the S. E. corner of the league, making the length of the south line 14,113 varas, practically reaching the point contended for by appellees as the S. E. corner of the Bradley. In these last two surveys Horatio Chrisman, the same surveyor who made the original survey for the grant, calls for the common corner of the Wm. Roberts and J. Bradley leagues on the Brazos river; calls for the same elm tree marked 1 E. R. for the beginning corner of the Wm. Roberts, and says it is the corner established by the English field notes made by Dixon. He calls for trees, marks, streams, etc., in a most accurate way, showing that he must have made an actual survey of the ground and that he had reached the S. E. corner of the Bradley league where he had placed it less than a year theretofore at a distance of 14,110 varas from its S. W. corner on the east bank of the river.

It is further shown that, prior to the agreement between the owners of the land on the Wm. Roberts and J. Bradley and those owning land on the Valderas fixing the boundary lines between the Roberts and Bradley on the west and Valderas on the east, various parties had purchased and improved small tracts in the east portion of both the Roberts and Bradley, and had been in possession of their several tracts for from 40 to 60 years, and that the line as contended for by appellees had been generally recognized by the oldest inhabitants in that community as the true east lines of the Roberts and Bradley leagues.

It was further shown by the testimony of E. S. Atkinson and J. L. Chambers, two competent surveyors, that they had been called upon to survey and had in fact made surveys of the Wm. Roberts league, and had made careful and diligent search for the original corners and boundary lines of the same. They testified that, after careful search for the original corners of the Bailey, Wm. Roberts, and J. Bradley surveys, they had not been able to definitely locate any one of them, but that they had definitely located the original N. E. corner of the S. F. Austin abandoned survey, called for in the English field notes made by Dixon describing the Wm. Roberts, and also called for by Chrisman in his field notes made in 1824, by which the Roberts was located and granted. They also testified that this original N. E. corner of the S. F. Austin is located about 1,095 varas south of the S. E. corner of the Roberts as contended for by appellees.

They further testified that a line run course and distance from the east bank of the Brazos river along the north line of the Roberts league, to wit, "east 14,224 varas and thence south 1,961 varas to the standard line, the point reached on said standard line would be about 224 to 227 varas west of the S. F. Austin N. E. corner called for in the English field notes and the Chrisman field notes to be 1,095 varas west of the S. E. corner of the Roberts."

It is clearly shown from the evidence that in 1824 Dixon surveyed and located both the Wm. Roberts and J. Bradley leagues by what is designated by the parties to this suit as the "old English field notes," and that shortly thereafter Horatio Chrisman was directed by Commissioner Baron de Bastrop and Empressario Stephen F. Austin to make the survey for the issuance of the grants. We think it is also clearly apparent from the evidence that on the 7th day of July, 1824, Chrisman, complying with said directions, adopted the survey made by Dixon and filed the same in the proper archives, and that in due time the same were filed and are now found in the proper records of the general land office of this state. It is also shown that both Dixon and Chrisman are dead. The grants to Roberts and Bradley both recite that the grants were issued upon the surveys made by Chrisman.

We deem the foregoing statement of the facts sufficient to properly discuss and dispose of the issues presented by this appeal, and while there were other facts proven tending to support the judgment of the court we deem it unnecessary to set them out here.

Upon the issues and facts stated, the cause was tried by the court without a jury, and judgment was rendered for appellees against the Barrows. From this judgment the Barrows have appealed.

It is apparent from what has been said that the main and controlling issue to be decided is: Was there a vacancy between the Wm. Roberts and Bradley leagues on the west and the A. Roberts labor and the Valderas survey on the east? Appellants admit that, if there is no such vacancy, appellees should recover.

[1] The substance of the several assignments of plaintiffs in error, the Barrows, is that the court erred in admitting in evidence the English field notes by Dixon and the field notes by Horatio Chrisman, describ-

ing the Wm. Roberts and J. Bradley leagues, made in 1824, which formed the basis for the issuance of the grants to the land embraced within the boundaries of the same, as shown on the face of the grants, and in submitting in evidence maps, plats, and field notes of other grants adjoining said Roberts and Bradley leagues made about the same time as those made for the location of the Roberts and Bradley by the same surveyor, and in admitting in evidence the testimony of Surveyors Atkinson and Chambers as to the true location of the east lines of the Roberts and Bradley leagues, which tended to show that the east boundary lines of the Roberts and Bradley leagues were actually located by the locating surveyor at a greater distance east from the Brazos river than the distance called for in the grants of said two leagues, and upon such evidence finding that such lines were further east than called for in the grants, because there was no ambiguity in the field notes inserted in the grants fixing the boundaries of said leagues, and because such field notes, maps, plats, and testimony furnished no evidence tending to show the footsteps of the surveyor who originally located said leagues, or that he located the east boundary line thereof further east than they would be located by following course and distance from the river as called for in the field notes in the grant.

The Barrows, plaintiffs in error, concede that, if the field' notes in the grants were ambiguous, extraneous evidence, such as was admitted, would be admissible as tending to show where the boundary lines were actually located by the locating surveyor; but they contend that there was no such ambiguity. Such contention, however, we think is untenable. The evidence shows that neither the original beginning corner, or any other original corner of either of the Wm. Roberts or Bradley leagues, can now be found on the ground, and that neither of the leagues could be located on the ground by the use of the field notes in the grants, and that to enable any one to locate either of said leagues it would be necessary to resort to the field notes prepared by Dixon and Chrisman, filed in the proper archives as evidence of the rights of grantees to the land granted. The Barrows admit that without the use of the English field notes prepared by Dixon the beginning corner of the Wm. Roberts league could not be even approximately located. In their brief they insist that these field notes should be resorted to to locate the beginning corner of the Wm. Roberts, and that, if such resort is had, then the point where the original beginning corner is located can be approximately determined—that is to say, within 100 or 200 varas of its original location. Now, if we resort to the field notes prepared by either Dixon or

Chrisman to locate the boundaries of the league, we find but one natural or artificial object called for in either of them which can now be located on the ground. Both of these surveys call for the northeast corner of the S. F. Austin abandoned survey, shown to be a group of live oak trees, which they locate at 1,095 varas west of the southeast corner of the Roberts league. All the evidence shows that this northeast corner of the S. F. Austin is now to be found and definitely located. With this evidence before the surveyors, who undertook to locate the east boundary line of the Roberts league, and who testified as witnesses, they say they began at a point on the east bank of the Brazos river where the north line of the Roberts intersects said river; they then ran 14,224 varas east, called for in the grant field notes, and also in the Dixon and Chrisman field notes; they then ran south 196 varas called for in all of said field notes, and they found that the S. F. Austin N. E. corner, which, according to the location field notes by Dixon and Chrisman, should be 1,095 varas west of the S. E. corner of the Roberts league, was in fact 224 varas east of the point which they had reached by following course and distance calls in the grant field notes.

Without going into further details, we find that, when an attempt is made to locate the boundaries of the Roberts league on the ground by the field notes in the grant, an ambiguity at once appears, and that the court did not err in so concluding and in admitting the evidence complained of.

The S. F. Austin corner called for in the locative field notes of Dixon and Chrisman above mentioned, being now found on the ground, should, we think, have constituted the pivotal point to begin a resurvey to determine where the original boundaries of the Roberts league were located. If this be done, the N. E. corner and the east boundary line of the Roberts will be found to be about 1,300 varas east of the location contended for by the Barrows and at the place contended for by appellees.

[2] The Barrows seem to take the position that they could use the old English field notes of the Roberts league as evidence to establish, or approximately establish, the location of the original beginning or N. W. corner of said league, but that such field notes could not be used by appellees in an effort to show that the original S. E. corner of the league was 1,095 varas east of the S. F. Austin N. E. corner. Such contention is inconsistent and contradictory, and, of course, cannot be sustained. The Barrows seem also to insist that to trace the footsteps of the original or locating surveyor one must begin at the corner at which the locating surveyor began his survey, or

at a point ascertained to be approximately near said corner, rather than at a well established and known corner of an adjoining survey called for by the locating surveyor in fixing the boundaries in question. This contention is also untenable and cannot be sustained. Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; s. c., 105 S. W. 1006; Hermann v. Thomas, 168 S. W. 1044, 1045; Matador Land & Cattle Co. v. Cassidy-Southwestern Com. Co., 207 S. W. 430; Wilkins v. Clawson, 37 Tex. Civ. App. 162, 83 S. W. 732. In the case last cited it is said:

"The call for the beginning corner of the Morgan in the north line of the Nash is of no greater dignity than other calls in the field notes."

We think it must be conceded by the Barrows that the surveys made by Dixon and Chrisman in 1824 were the only surveys made prior to the issuance of the Roberts and Bradley grants, and that there were no field notes of other surveys filed in the proper archives authorizing the issuance of the grants.

[3] It is well settled that original English field notes and maps prepared by the surveyor who located surveys are parts of the original title and may be considered in aid of the description contained in the grant and to supply what is omitted therefrom. Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 899, and authorities there cited; Wilkins v. Clawson, 37 Tex. Civ. App. 162, 83 S. W. 732; Ayers v. Harris, 77 Tex. 108, 13 S. W. 768; Cook v. Dennis, 61 Tex. 246; Cottingham v. Seward, 25 S. W. 797; Ayers v. Watson, 137 U. S. 594, 595, 11 Sup. Ct. 201, 34 L. Ed. 808.

In Wilkins v. Clawson, supra, Judge Pleasants speaking for this court, referring to the field notes embraced in the grant, said:

"But we must not look alone to these field notes in determining the sufficiency of the description. The original English field notes and the plat or map prepared by the surveyor who located the survey are a part of the original title, and must be considered together with the field notes embodied in the grant for the purpose of identifying and fixing the location of the survey. Welder v. Carroll, 29 Tex. 331; Cook v. Dennis, 61 Tex. 248; Irvin v. Bevil, 80 Tex. 338, 16 S. W. 21."

[4] It is apparent from what has been said that we have reached the conclusion that the trial court did not err in admitting the evidence complained of and in finding from the evidence that the east boundary lines of the Roberts and Bradley leagues were at the place contended for by appellees. Having reached such conclusion the judgment of the trial court is affirmed.

Affirmed.