### DAVIS, Agent, v. HILL et al. (No. 197.)

(Court of Civil Appeals of Texas. Waco. March 26, 1925.)

1. **Appeal and error ☞1176(2)—Court of Civil Appeals, on reversal, unauthorized to instruct trial court to instruct verdict for appellant if evidence is same on another trial.**

Court of Civil Appeals is unauthorized, on reversal of a case for insufficiency of evidence, to instruct trial court, if evidence is same on another trial, to instruct a verdict for appellant.

2. **Trial ☞139(1)—Whether there is any evidence to sustain a verdict is a question for court.**

Whether there is any evidence to sustain a verdict is question of law for the court.

3. **Trial ☞139(1)—Whether there is sufficient evidence to sustain a verdict is for jury.**

Whether there is sufficient evidence to sustain a verdict is a question for jury.

4. **Trial ☞139(1)—Trial court must submit case to jury if evidence raises issues of fact.**

Trial court must submit case to jury if it thinks that evidence raises issues of fact.

5. **Railroads ☞350(1)—Liability for death of pedestrian held for jury.**

In action for death involving question whether decedent was hit by train at crossing or injured while lying under box car on spur track, whether plaintiff was entitled to recover *held* for jury.

6. **Death ☞99(4)—$6,500 damages for death of husband held not excessive.**

Damages of $6,500 for death of plaintiff's husband *held* not excessive, in view of Rev. St. art. 4704, though he had neither money nor employment when he was killed, where he was only 26 years of age, strong and industrious, and had been earning $5 per day when employed.

7. **Witnesses ☞345(1)—Refusal to admit evidence as affecting credibility of witness held not erroneous.**

Copies of an indictment against witness and judgment of forfeiture on his bail bond were not admissible as affecting his credibility; proper way to impeach credibility of a witness being by proof of his general reputation for truth and veracity by witnesses who know such reputation, and not by specific charges.

8. **Witnesses ☞391—Detailed statement called for by interrogatory held properly excluded as being no part of predicate for impeachment of witness and as hearsay.**

Where defendant, after laying a predicate to impeach witness, asked another whether witness had made statements, incorporated in full in interrogatory with direction, if interrogatory was answered in affirmative, to state in detail all that witness said, detailed statement *held* properly excluded as no part of predicate for impeachment and hearsay.

9. **Depositions ☞81—Discretion not abused by permitting amendment of commission to take depositions.**

Court *held* not to have abused its discretion in permitting commission to take depositions to be corrected by changing address from Limestone county to McLennan county, after such depositions had been taken by an officer of latter county.

10. **Appeal and error ☞1060(1)—Argument of counsel picturing unequal condition of litigants held reversible error, where question of liability was close.**

In action against Director General of Railroads for death of plaintiff's decedent, argument of plaintiff's counsel picturing unequal financial condition of litigants, and that judgment for plaintiff would not cost railroad anything, *held* reversible error, where it did not appear that argument was in reply to that of defendant's counsel and question of liability was very close.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Action by Mrs. Alda Hill and others against James C. Davis, Agent. Judgment for named plaintiff, and defendant appeals. Reversed and remanded as to named plaintiff.

C. L. Barrow and Terry, Gavin & Mills, all of Galveston, and Nat Harris, of Waco, for appellant.

J. A. Kibler and Tom Hamilton, both of Waco, for appellees.

### Statement.

STANFORD, J. This suit was filed August 20, 1919, by Mrs. Alda Hill against Walker D. Hines, Director General, and the Gulf, Colorado & Santa Fé Railway Company, for the recovery of damages resulting from the alleged negligence of the Director General while engaged in operating the Gulf, Colorado & Santa Fé Railway Company, in causing the death of her husband, G. E. Hill. On June 15, 1920, appellee filed her amended petition, in which she prosecuted the suit for herself and for the use and benefit of J. D. Hill and Mrs. M. E. Hill,

father and mother of G. E. Hill, deceased. In the meantime, Payne, Agent, was substituted in lieu of Walker D. Hines, and the Gulf, Colorado & Santa Fé Railway Company was dismissed from the case. The first three trials resulted in hung juries. The fourth trial resulted in a judgment for Alda Hill for $12,500 and $500 in favor of the father and mother. Appeal was taken to the Court of Civil Appeals, Third District, and said cause reversed and remanded for another trial, Payne v. Hill (Tex. Civ. App.) 242 S. W. 302. James C. Davis, Agent, was substituted for Payne. The trial court, when the case was called again for trial, sustained a plea in abatement, from which action appellee prosecuted an appeal to this court, and the action of the trial court in sustaining said plea in abatement was reversed and the cause remanded for another trial. (Tex. Civ. App.) 257 S. W. 340. Upon the last trial the case was submitted to the jury upon special issues, which special issues and the answers of the jury are as follows:

"Special Issue No. 1. Was the deceased, G. E. Hill, injured by being struck by one of the defendant's cars at the place where Schaffer street intersects defendant's railway track?" Answer: "Yes."

"If you answer the foregoing question, 'No,' you need not answer any other issue submitted to you; but if you answer it, 'Yes,' then you will answer the following issues:

"Special Issue No. 2. Did the agents, servants, and employees of the defendants suddenly start and move a string of cars over the public crossing of Schaffer street, and against the deceased, G. E. Hill, on the occasion in question without giving any alarm with the bell or whistle of the engine moving said cars, if any?" Answer: "Yes."

"If you answer the foregoing question, 'No,' you need not answer special issues Nos. 3 and 4; but if you answer it, 'Yes,' then you will answer the following issue:

"Special Issue No. 3. Were such acts and omissions, if any, negligence on the part of the agents, servants, and employees of the defendant?" Answer: "Yes."

"If you answer the foregoing special issue, 'No,' you need not answer the following issue; but if you answer it, 'Yes,' then you will answer No. 4.

"Special Issue No. 4. Was such negligence, if any, the proximate cause of the injuries and death of the plaintiff's husband, G. E. Hill?" Answer: "Yes."

"Special Issue No. 5. Did the agents, servants, and employees of the defendant suddenly start and move a string of cars over the public crossing of Schaffer street, and against the deceased, G. E. Hill, on the occasion in question, without having any brakeman on said crossing, or on said string of cars, to warn persons using said public crossing of danger prior to moving said string of cars over said crossing, if they did so move said string of cars?" Answer: "Yes."

"If you answer the foregoing question, 'No,' you need not answer special issues Nos. 6 and 7; but if you answer it, 'Yes,' then you will answer No. 6.

"Special Issue No. 6. Were such acts and omissions, if any, negligence on the part of the agents, servants, and employees of the defendant?" Answer: "Yes."

"If you have answered the above special issue, 'No,' then you need not answer the next special issue; but if you have answered it, 'Yes,' then you will answer the following issue:

"Special Issue No. 7. Was such negligence, if any, the proximate cause of the injuries to and death of plaintiff's husband?" Answer: "Yes."

"Special Issue No. 8. At the time plaintiff's husband was injured, was he a trespasser down in the yards of the defendant, among its tracks and away from any public thoroughfare, street, or passageway?" Answer: "No."

"Special Issue No. 9. At the time plaintiff's husband was injured, was he lying down under one of the defendant's cars, among its tracks and trains, away from a public thoroughfare, street, or passageway over its tracks?" Answer: "No."

"Special Issue No. 10. What amount of money, if paid now, will reasonably compensate the plaintiff for the pecuniary loss, if any, she has sustained by reason of the death of her husband?

"In estimating such amount, if any, you may take into consideration his probable earnings from the date of his death to the present time, and in the future, and the pecuniary value, if any, of his counsel, protection, and service to her, if any, had he lived; but you cannot take into consideration any mental distress, or the loss of his society, by reason of his death." Answer: "$6,500.00."

The trial court entered judgment against J. D. Hill and M. E. Hill, and for the appellee, Mrs. Alda Hill, for $6,500. Other facts will be stated in connection with the assignments discussed.

## Opinion.

Under his first assignment, appellant contends that where a cause has been reversed and remanded by the appellate court because of the insufficiency of the evidence, and where the evidence on the retrial of the cause is, in all material points, the same as on the former trial, the action of the appellate court in reversing and remanding is binding on the trial court; and by several other assignments contends that the trial court should have peremptorily instructed a verdict for the defendant, and that the trial court erred in submitting each one of the issues submitted in this cause, on the ground that the evidence was not sufficient to authorize same. Other assignments contend that where the verdict of the jury is against the manifest weight and great preponderance of the evidence, it becomes the duty of the appellate court to reverse the judgment based on such evidence.

[1-5] At Cleburne the main line of the Gulf, Colorado & Santa Fé Railway Company runs nearly north and south. The passenger depot is between Henderson and Chambers streets, running east and west, crossing the tracks of said railway. Its

'freight depot is a little less than a block south of the south end of the passenger depot, and its freight platform extends on south of its freight depot to very nearly Schaffer street. Schaffer street runs east and west, crossing the tracks of said railway and also the tracks of the Trinity & Brazos Valley, and is the only street crossing said tracks south of Chambers street. About three blocks south of Schaffer street there is a switch track leading off from the main line of the Gulf, Colorado & Santa Fé Railway track, extending in a northwest direction, crossing the tracks of the Trinity & Brazos Valley Railway, which is west, near to and parallel with the tracks of the Gulf, Colorado & Santa Fé Railway Company. From where this spur track crosses the tracks of the Trinity & Brazos Valley Railway Company, it is about 350 feet long. There are three transfer tracks along the east side of the Santa Fé freight depot and platform, which also cross Schaffer street. Also, the tracks of the Trinity & Brazos Valley cross Schaffer street, running just west of the Santa Fé depot.

G. E. Hill, husband of appellee, was, on August 7, 1919, run over by some box cars of the Gulf, Colorado & Santa Fé Railway Company, and so badly injured that he died two days later. There were two theories about where he was run over; appellee contending he was knocked down and run over on the Schaffer street crossing, and the appellant contending he had gone about two blocks south of Schaffer street, across the tracks to the west side, and had lain down under some box cars on what is known as the new city spur track and gone to sleep. Appellant's amended answer, raising the contention that deceased was not hurt on the Schaffer street crossing, but was hurt on said spur track, was not filed until April 5, 1920.

R. R. King testified by deposition taken on September 12, 1919, that he lived at Wortham; that he and Hill were brothers-in-law; that he and Hill had come to Cleburne from Fort Worth over the interurban on their way to Temple, and arriving about 1 o'clock at Cleburne. After they had dinner they went to the Santa Fé depot to see when they could get a train for Temple. After waiting awhile in the depot, Hill said he knew some people across the track, west and beyond the freight depot, and so they walked down to the freight depot for the purpose of locating the people Hill knew. At the lower end of the freight depot, King told Hill he was tired and would wait there for him. That Hill walked on, going right to the dirt road crossing the railroad track, and was crossing the track at the end of some box cars on the track with the end of said cars standing right next to the street, and when the switch engine bumped into the cars he looked around and the drawhead on the cars hit Hill on the side and knocked him down. That he was right in the street, and where the sidewalk would have been had there been one. Hill was about three feet from the end of the cars and in the street and right on the railroad track where it crosses the street. When the cars pulled off of him, he got up and ran about two car lengths and fell, and that he (King) picked him up on his feet. That he then jerked loose from him and ran about the length of a car and a half and fell, and he lay there while King went to phone for a doctor. The doctor did not come for about 30 minutes, and that he (King) went across the track, west, to a residence and phoned for the city ambulance. That there were no signals of any kind given by the train or engine at the time and just prior to said accident, and there was no one at the place where Hill was struck, nor on the cars at the time he was struck. "Hill never said a word to me after he was struck, but merely looked crazy at me and had his face all bruised up." When the doctor and the ambulance arrived, they picked Hill up between the spur track and the track of the Trinity & Brazos Valley Railway, some 540 feet south a little west of the Schaffer street crossing. His shoes and coat were off and lying by him on the ground.

Judge Key, of the Court of Civil Appeals, Third District, in rendering his opinion, laid much stress upon the fact that Hill's coat and shoes were off when he was picked up, and to explain that circumstance King's depositions were taken again on September 30, 1922, in which, on this point, he testified:

"After I had asked the man at the yard office to phone for a doctor and I had returned to where Hill fell, I went up to the crossing where he was struck and got his hat and coat and waited there where Hill fell some little time. The doctor did not come. Hill was suffering greatly and muttering and groaning. He sat up and was getting on his feet, and I helped him up. It didn't look like the doctor was coming, and after he got up it occurred to me that maybe I could get him over to the home of his friend where we had started when we left the passenger depot. He walked along with me for some distance until we got over by some box cars on a side track, where he sat down, complaining and muttering, crazy talking way, that his feet and legs were broke or mashed, and tried to take off one of his shoes, or started to, and I asked him if he wanted his shoes off. He didn't say anything, but stretched out on the ground, and I pulled his shoes off. I then went across the track and phoned for the ambulance. I then went back to where Hill was, and in a little while the doctor and the ambulance came. * * * When I tried to get him over to his friend's house, I carried his coat along with mine on my arm."

The ambulance carrying Hill arrived at the sanitarium at 4:30. Hill's feet and legs did not appear to be injured, but the injury seemed to be to his spine.

As stated above, there were three transfer

tracks east of the freight depot and platform, which extended up to and across Schaffer street, and two of them extended some 600 feet south of Schaffer street. There was one transfer track and the main line of the Trinity & Brazos Valley immediately east of the freight depot and platform, which crossed Schaffer street and extended some 600 feet south of said street. Schaffer street was used by the public in crossing the tracks of both railway companies, being the only street crossing south of the one just south of the depot. There was a switching crew, composed of five men, engaged in switching cars all the afternoon of August 7th, the date on which Hill was injured, in what is known as the south yard; that is, in the vicinity of the freight depot both north and south of Schaffer street. There is no evidence in the record that there was not a string of cars on one of these tracks, extending up to the south line of Schaffer street, on said afternoon, and no evidence that a switch engine did not bump into said cars, shoving them across, or partially across, Schaffer street. In fact, said switching crew do not undertake to give any account of what they did that afternoon, except from about 3:30 to 3:45 or 4:00 o'clock, and during this time they pulled four bad order cars from the second transfer track east of the depot across Schaffer street and about 600 feet south, and shoved them in on the new city spur track. They said there were already three cars on this spur track. As two, and a part of the time three, of the members of this crew were on the ground along by the side of this spur track at the time said cars were shoved in, if Hill had been lying down under one of those three cars when they were shoved, and he was injured as contended by appellant, we think it very probable some member of this crew would have heard an outcry from him, or have seen him, or in some way discovered his presence. Appellant made a very strenuous effort in various ways to discredit the witness King; but, as disclosed by the record, he was the only witness who claimed to have seen the accident. His version of it is reasonable, and while there are some circumstances that tend to contradict him and many statements that do directly contradict him, there are other circumstances that tend to corroborate his evidence.

It is true the Court of Civil Appeals, Third District, on the former appeal, reversed and remanded this case on the insufficiency of the evidence, but did not instruct the trial court if the evidence was the same on another trial to instruct a verdict for appellant. In fact, said Court of Civil Appeals would have had no right to give such instruction to the trial court. Choate v. S. A. & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69; Wininger v. Fort Worth & D. C. Ry., 105 Tex. 56, 143 S. W. 1150. Whether there be any evidence or not is a question of law, and so a question for the court. Wheth-

er there is sufficient evidence is a question for the jury. 1 Greenleaf on Evidence, § 491. The trial court was correct in submitting this case to the jury on the last trial, and it would have been his duty to do so if he thought the evidence raised issues of fact, even if the evidence on the last trial had not been more favorable to the appellee than it was on the former trial. However, it is our view that the evidence was more favorable to the plaintiff on the last trial than on the former one, so we overrule all of those assignments which claim that the court was in error in submitting the case to the jury on the last trial. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; St. Louis S. W. Ry. Co. v. Morgan (Tex. Com. App.) 239 S. W. 607; Hines v. Kansas City L. Ins. Co. (Tex. Civ. App.) 260 S. W. 688; Payne, Agt., et al. v. Smith (Tex. Civ. App.) 268 S. W. 243; Traction Co. v. Higdon (Tex. Civ. App.) 123 S. W. 736.

By said other assignments, appellant contends that the evidence is insufficient to support the verdict of the jury, and for which reason we should reverse the judgment of the trial court. In view of the disposition we have decided that we must make of this appeal, it is not necessary to pass upon this question.

[6] Under appellant's ninth assignment, the contention is made that the court erred in refusing to grant a new trial because there was no evidence that appellee had sustained any pecuniary loss by the death of her husband. The record discloses that G. E. Hill and appellee were married on June 19, 1919, at Waco; that they had been acquainted six or seven years; that G. E. Hill had been mustered out of the army only a short time before the marriage; that he had no employment and they had no money to furnish a house so they could go to housekeeping, so they lived together only a few days in the home of R. R. King and wife at Wortham, Mrs. King being a sister of Mrs. Hill, when Hill and King went to Kansas to get employment in the harvest fields, and they were on their way back when Hill was killed. Hill was a strong, healthy, industrious, economical young man, only 26 years of age, and had been earning $5 per day when he had employment. The fact that he had neither money nor employment is explained by the fact that he had just returned from the army. That he was industrious and anxious to provide for his young wife is indicated by his trip to Kansas in order to secure employment. Under article 4704, Revised Statutes, the jury may give such damages as they think proportionate to the injury, and the amount of damages is within the discretion of the jury, subject to revision by the court in case such discretion is abused. Article 4704, Revised Statutes; Austin Rapid Transit Ry. v. Cullen (Tex. Civ. App.) 29 S. W. 256; H. & T. C. Ry. Co. v. Loeffler (Tex. Civ.

App.) 51 S. W. 536; St. L. S. F. Ry. Co. v. Bolen, 61 Tex. Civ. App. 339, 129 S. W. 860; T. & N. O. Ry. Co. v. Mills (Tex. Civ. App.) 143 S. W. 690; S. A. & A. P. Ry. Co. v. Boyed (Tex. Civ. App.) 201 S. W. 219. We overrule appellant's ninth assignment.

[7] Under appellant's eleventh, twelfth, and thirteenth assignments, appellant complains of the refusal of the trial court to admit in evidence copies of an indictment of R. R. King, also a bail bond and judgment of forfeiture on said bond, offered by appellant as affecting the credibility of said witness. We overrule these assignments. It is elementary that the proper way to impeach the credibility of a witness is proof of his general reputation for truth and veracity by witnesses who know such reputation, and not by specific charges, as attempted here. No difference what a man may be charged with, he is conclusively presumed to be innocent until his guilt is established by legal and competent evidence. M., K. & T. Ry. Co. v. Creason, 101 Tex. 335, 107 S. W. 527; McDonald v. Humphries (Tex. Civ. App.) 146 S. W. 712; Hazard v. Insurance Ass'n, 54 Tex. Civ. App. 110, 116 S. W. 625; M., K. & T. Ry. Co. v. Adams, 42 Tex. Civ. App. 274, 114 S. W. 453.

[8] By his twenty-second assignment, appellant complains of the action of the court in excluding part of the answer of H. H. Jennings to the eighth interrogatory of his deposition. In his cross-interrogatories to King, for the purpose of laying a predicate to impeach King, appellant asked King if he had not made certain statements to H. H. Jennings, setting out said statements in full in the cross-interrogatory to King, and King denied having made such statements. Appellant then propounded interrogatories to Jennings, and in the eighth interrogatory asked the witness if King had made such statements to him, incorporating the statements in full in the interrogatory to Jennings, and concluded the interrogatory by requesting, "If you answer, 'Yes,' then state in detail what all King said on said occasion," etc. The court admitted the affirmative answer of Jennings, but excluded the detailed statement called for. In this we think the court was right. The statements made the predicate for impeachment being incorporated in the cross-interrogatory to King, which he denied making to Jennings, and also the same statements incorporated in the eighth interrogatory to Jennings, and which Jennings affirmed King did make to him, were sufficient for impeachment purposes and placed before the jury and in the record the statement made the basis for impeachment; King's denial of making same, and Jennings' affirmation that he did make it. Other matters detailed by Jennings that King said to him were no part of the predicate for impeachment, and were hearsay and inadmissible for any purpose. This assignment is overruled.

[9] Under the twenty-third assignment, appellant complains of the action of the court in permitting the commission to take the depositions of R. R. King to be corrected by changing the address of said commission from Limestone county to McLennan county, after said depositions had been taken by an officer of McLennan county. It was within the discretion of the trial court to permit such amendment. Irvin v. Bevil et al., 80 Tex. 332, 16 S. W. 21; Wallace v. Byers et al., 14 Tex. Civ. App. 574, 38 S. W. 228; Creager v. Douglass, 77 Tex. 484, 14 S. W. 150; Price v. Horton, 4 Tex. Civ. App. 526, 23 S. W. 501; Gray v. Phillips, 54 Tex. Civ. App. 148, 117 S. W. 870; G., C. & S. F. Ry. Co. v. Lyman, 27 Tex. Civ. App. 22, 65 S. W. 69. The above assignment is overruled.

[10] By the twenty-fourth and twenty-fifth assignments, appellant complains of the action of the trial court in refusing to sustain his objections to the argument of appellee's counsel, in reference to the unequal financial conditions of plaintiff and defendant, as follows:

"With eight claim agents working for the past five years, they were able to discover some eight or ten men who were willing to come over here, for a price, and say that King had a bad reputation for truth and veracity. Why, gentlemen, you can name any man in this town, almost, and I will include the ministers of the town in that, and give me eight claim agents— railroad claim agents—and the treasury of the United States back of me to pay the expenses, and I will produce as many witnesses that will impeach any man you want to name! You put the treasury of the United States—and that is what this little woman is fighting—

"Mr. Harris: We object to that—

"Mr. Kibler (continuing): This is not a suit against the Santa Fé Railroad, gentlemen; the Santa Fé Railroad Company won't have to pay one thin dime in this case. When this tragedy occurred, the railroads of this country were in the hands of the government. This is a suit against the United States government. And just why the Santa Fé Railroad Company, with its organized claim department, should pursue this little woman for five years with eight claim agents, trying to prevent her from getting what she is entitled to, and making the hard, bitter fight they have made against her for these five long years, I can't understand. Mr. Harris don't have to pay one dime out of his pocket, and if Mr. Harris wins this lawsuit, the only comfort he will get out of it will be that he will be able to report to his boss, 'Look what I "done"!'

"Gentlemen, I say that if I had the treasury of the United States back of me, and if this little woman had it to pay her expense account with, I could have brought enough people from Limestone county to prove that Bob King had a most excellent reputation, and at the same time if I had eight claim agents and that much money to pay the expenses with, I could have brought out of Johnson county, where this fellow Ferguson lives, enough witnesses to have damned him with his story before this jury forever.

" * * * And I repeat again that if this lit-

tle woman had had the United States treasury to reach her hand into to get expense money to undertake to fight what she has been up against, and you saw what it has been, don't you?"

This argument was improper for several reasons. We think the most objectionable feature of it was the very graphic way in which counsel, in effect, pictured the unequal financial condition of the litigants, the unequal contest—the plaintiff a little woman without means for obtaining witnesses, the defendant having access to the treasury of the United States, with its unlimited means. It was also improper to refer to the fact that any judgment rendered in favor of plaintiff would not cost the railway company anything, but would be paid out of the United States treasury, etc. A part of this improper argument was in the opening argument of counsel for appellee, and then, in the closing argument:

"And I repeat again that if this little woman had had the United States treasury to reach her hand into to get expense money to undertake to fight what she has been up against, and you saw what it has been, don't you?"

There is nothing in the record to indicate that any of said argument was replied to by appellant's counsel, and certainly that used in the closing argument could not be replied to. There is nothing in the record to indicate that any part of said improper argument was called forth by anything said by appellant's counsel. In the case of I. & G. N. Railway Co. v. Irvine, 64 Tex. 535, our Supreme Court, by Judge Stayton, said:

"The use of improper language or course of argument by adverse counsel, within itself, furnishes no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal."

The amount of the verdict in this case is not large, and its amount alone would not indicate that the improper argument had any harmful effect on the jury; but in this case the question of liability was very close, the evidence to show liability was rather unsatisfactory, and while we cannot say that the verdict of the jury is against the manifest weight and great preponderance of the evidence, or that said verdict is clearly wrong, yet the verdict seems to be against the preponderance of the evidence, and in such instances special care should be taken by the trial court, and by counsel in their argument, to leave the jury, free and untrammeled from any possible influence of improper argument, to decide the case only upon matters proper for their consideration.

The Oriental et al. v. Barclay, 16 Tex. Civ. App. 193, 41 S. W. 117; Chicago, R. I. & T. Ry. Co. v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027, 48 S. W. 610; Gulf, T. & W. Ry. Co. v. Culver (Tex. Civ. App.) 168 S. W. 514; Dallas Consolidated Electric St. Ry. Co. v. Black, 40 Tex. Civ. App. 415, 89 S. W. 1087; Chicago, R. I. & G. Ry. Co. v. Swann, 60 Tex. Civ. App. 427, 127 S. W. 1164; Willis v. McNeill, 57 Tex. 465; Texas & St. L. R. Co. v. Jarrell, 60 Tex. 267; I. & G. N. Ry. Co. v. Irvine, 64 Tex. 535; Houston Ice & Brewing Co. v. Harlan, 212 S. W. 779; Southern Pac. Co. v. Miller (Tex. Civ. App.) 207 S. W. 554.

The plaintiffs J. D. Hill and M. E. Hill not having appealed, we affirm the judgment of the trial court as to them; but we sustain appellant's twenty-fourth and twenty-fifth assignments, as to Mrs. Alda Hill, and for the error above pointed out, reverse and remand this cause as to said plaintiff.