## DEMPSTER MILL MFG. CO. v. WILEY et al.

### No. 2117.

Court of Civil Appeals of Texas. Waco.

July 6, 1939.

258

Touchstone, Wight, Gormley, Strasburger & Price, of Dallas, Tom R. Mears, of Gatesville, and Mueller & Green, of San Antonio, for plaintiff in error.

Richey, Sheehy & Teeling, of Waco, Tom L. Robinson, of Gatesville, and John F. Battaile, of Houston, for defendants in error.

ALEXANDER, Justice. ·

This is a companion suit to the case of Dempster Mill Manufacturing Company v. Lester, Tex.Civ.App., 131 S.W.2d 254, this day decided. Grover Wiley brought this suit against Dempster Mill Manufacturing Company for damages for personal injuries sustained by him. A trial before a jury resulted in judgment for plaintiff in the sum of $15,000. The defendant sued out this writ of error.

There is no material dispute in the evidence. The Evant Independent School District sponsored a project to construct a water system, including the erection of a sixty foot tower and tank and the laying of the necessary pipe. The Works Progress Administration of the United States Government agreed to aid in the project. The

School District agreed to furnish the tower and tank and some of the necessary pipe and fittings, and the Works Progress Administration agreed to furnish all labor and the balance of the pipe necessary to complete the project. The School District sublet to Dempster Mill Manufacturing Company the contract to furnish the tower and tank. In the agreement between Dempster Mill Manufacturing Company and the School District, it was understood that the laborers furnished by the Works Progress Administration were to do all the work that they were capable of doing and were willing to do in the completion of the project, including the erection of the tower and tank, but that on account of lack of experience on the part of these laborers there might be some work in connection with the erection of the tower and tank which they could or would not do and in that event the Dempster Mill Manufacturing Company was to furnish at its own cost the labor necessary to complete the same. Dempster Mill Manufacturing Company was also to furnish a man familiar with such work to supervise the erection and construction of the tower and tank. Grover Wiley was on the government relief rolls and was what was commonly known as a WPA laborer. The Works Progress Administration selected him and others similarly situated to perform its part of the labor necessary to complete the project. These WPA laborers were employed and paid by the Works Progress Administration and were entirely under the control of its supervisor on the job as to when and where they worked, the hours they should work and as to the character of the work they should perform. In fact, according to the testimony, the entire project and the WPA laborers working thereon were under the supervision and control of the supervisor furnished by the Works Progress Administration except that Dempster Mill Manufacturing Company furnished a supervisor who instructed the WPA laborers how to do the work in connection with the erection of the tank and tower. The plans called for the painting of the tower after it had been erected. While Grover Wiley and a companion, Herbert Lester, were on the tower putting the last coat of paint on it, the tower collapsed and fell to the ground, killing Lester and seriously injuring Wiley. There was evidence by experts that the angle irons used for the legs of the tower were too light, and that the splice irons used to join the sections of the legs were too short. There

was evidence that the splice irons furnished by the defendant to join the sections of the tower legs together did not fit, and that the defendant's supervisors in charge of the work caused the leg irons to be cut off with a blow torch, leaving a rough edge instead of a smooth one at the joint. Experts testified that this materially weakened the legs of the tower. The water tank was set nine inches off the center of the tower. There was evidence that this shifting of the extra weight onto one leg of the tower caused it to buckle and fall. The defendant's agent, S. L. Clark, testified that on the morning of the accident, about ten minutes before the tower fell, Blythe, the defendant's supervisor in charge of the erection of the tower, reported to him that the tower was shaky, but that he laughed at the report and did not give instructions for the plaintiff to come down off of the tower. The jury found that the company's agent discovered that the tower was shaky prior to the accident and was guilty of negligence in failing to warn the workmen on the tower of the danger.

In the companion case of Dempster Mill Manufacturing Company v. Lester, Tex.Civ.App., 131 S.W.2d 254, this day decided, we held that the WPA laborers working on the tower at the time of the accident were employees of the Works Progress Administration and not of Dempster Mill Manufacturing Company, and that the provisions of our Workmen's Compensation Act, Vernon's Annotated Civil Statutes, art. 8306 et seq., had no application. We also held in that case that the evidence was sufficient to support the jury's finding of negligence on the part of the defendant. We adhere to such rulings in this case.

The court submitted "unavoidable accident" as follows:

"Do you find from a preponderance of the evidence that the fall of the tower in question was not the result of an unavoidable accident? Answer: 'It was the result of an unavoidable accident,' or 'It was not the result of an unavoidable accident,' as you find the facts to be.

"In this connection, you are instructed that an unavoidable accident is one that happens suddenly and without fault or negligence of any party affected thereby."

The defendant contends that this manner of submitting the issue improperly placed the burden of proof on it. This method of

submitting the issue was in keeping with the suggestion of the Supreme Court in the case of Southern Ice & Utilities Company v. Richardson, 128 Tex. 82, 95 S.W.2d 956, and consequently presents no reversible error. Furthermore, the evidence failed to raise the issue of unavoidable accident, and the court was not required to submit that issue. International-Great Northern R. Co. v. Lucas, 128 Tex. 480, 99 S.W.2d 297, and authorities there cited. Since the court was not required to submit the issue, any error in the manner of submitting same was immaterial.

The court submitted the issue of damages as follows:

"What sum of money, if any, do you find from the preponderance of the evidence, if paid to the plaintiff in cash at this time, would compensate him for such damages as you may believe he has sustained as a result of the falling of said tank and tower, taking into consideration the following elements only:

"(a) Physical and mental pain suffered by him in the past, if any, and such as you may believe he will in the reasonable probability suffer in the future, if any;

"(b) The reasonable and necessary expenses for medical and surgical attention and hospital expenses, if any, that have been incurred in the past as a result of said injuries, and as a result of the accident in question; and

"(c) The reasonable value of the earnings lost by him in the past, if any, and the reasonable value of his reduced capacity to labor and earn money in the future, if you should believe and find that his capacity to labor and earn money will in reasonable probability be diminished in the future.

"Answer in dollars and cents, if any, you find."

■ Defendant objected to the issue because it failed to instruct "how to calculate the cash value of such sums of money as will represent the damages to be sustained by the plaintiff in the future. * * * The jury should discount the value of such decreased ability to work and earn money in the future and for the mental and physical suffering to be endured in the future at such a rate of interest as the sum or value thereof could be safely and securely invested during the period for which damages are allowed." The form of the charge used by the trial court in submitting the measure of damages has heretofore been approved by the appellate courts, and consequently the court did not err in refusing to instruct the jury in the manner contended for by plaintiff in error. Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899, par. 9; Hines v. Kelley, Tex.Com.App., 252 S.W. 1033; Davis v. Hill, Tex.Civ.App., 272 S.W. 291. It should also be noted that the charge as given was correct so far as it went and if plaintiff in error desired any additional instructions, it should have tendered a proper special charge thereon instead of merely objecting to the charge. Texas & N. O. R. Co. v. Crow, Tex.Com. App., 123 S.W.2d 649, par. 8. This assignment is overruled.

■ Among other things, the plaintiff sued to recover the amount for which he had become obligated for medical and hospital bills. The defendant proved that such bills so incurred by plaintiff to the extent of $766.69 had been paid by the United States Employees' Compensation Commission, and it is here contended that since said bills have been so paid, the plaintiff was not entitled to recover therefor. The record discloses that in keeping with the provisions of Title 5, secs. 776 and 777 of the U.S.C.A., the plaintiff was required to and did actually assign to the United States Employees' Compensation Commission such sums as he might recover in this action as would be necessary to repay the amount so advanced by said Commission for the purpose of paying the medical and hospital bills. Consequently, the fact that these bills have been paid in the manner above set out constituted no defense to plaintiff's suit to recover therefor.

We have very carefully considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.