### HYDE v. MARKS.

No. 14036.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 23, 1940.

Rehearing Denied April 5, 1940.

Todd, Crowley & Thompson, of Fort Worth, and Touchstone, Wight, Gormley, Strasburger & Price, of Dallas, for appellant.

Penn' Jackson, of Cleburne, and Martin, Moore & Brewster, of Fort Worth, for appellee.

SPEER, Justice.

This is a suit for damages, growing out of a collision between a large passenger bus and a Pontiac automobile, alleged to have occurred on Hemphill Street, in the City of Fort Worth, early in the evening of January 1st, 1938.

Plaintiff Milton Marks instituted the suit against defendant G. W. Hyde, as owner of the bus. The parties will carry the same designation here as in the trial court.

Among other things, the pleadings of plaintiff disclose that on the date mentioned, he was driving south on Hemphill Street, en route to Venus, in Johnson County;

that Hemphill Street is the main thoroughfare leading from Fort Worth to Venus; that because of the negligence of the driver of defendant's bus, the two vehicles collided, proximately resulting in serious bodily injuries to him, for which he sought damages.

Defendant answered by general demurrer, general denial and specially by allegations of negligence on the plaintiff's part, charged to have been the proximate cause of the collision and the resultant injuries.

It is unnecessary for us to relate the various acts of negligence charged by the respective parties against the other. There is no complaint by either party that the pleadings were not sufficient to support evidence raising the issues that were submitted. Many witnesses testified concerning the movements of the vehicles involved, and their testimony is highly conflicting, thus raising issuable facts for jury consideration.

In his charge to the jury, the court defined "negligence", "proximate cause", "new and independent cause", "proper lookout" and "unavoidable accident". No complaint is made of either, except as to the latter. Error is assigned to that explanation, and it will be discussed by us later in this opinion.

The verdict was favorable to plaintiff in every particular.

The bus driver was found to be guilty of negligence in many respects, each being found to be a proximate cause of plaintiff's injuries. Plaintiff was acquitted of negligence on each issue submitted. The jury found that plaintiff's damages for mental pain and suffering since the accident and in the future, as well as diminished earning capacity, was $3,000. In answer to other issues, the jury awarded damages to plaintiff as follows: $520 for the Pontiac car; $250 for medical treatment; $219 for hospitalization; and $105 for nurse hire.

Because of the numerous grounds of negligence charged by both parties and the great volume of testimony offered, the court submitted 77 special issues. The amounts awarded by the jury aggregate $4,094, for which sum the judgment was entered. Defendant moved for a new trial and assigned in his motion 237 alleged reasons why it should be granted. The motion was overruled, and defendant has appealed.

Twenty-eight assignments of error are brought forward by defendant in his brief and these are concisely presented under four propositions or points relied upon for a reversal of the judgment entered.

The first proposition is based upon assignments of error one to five, both inclusive. These assignments are leveled at that part of the court's charge given in connection with the inquiry as to the amount plaintiff should recover for mental pain and suffering since the accident, as well also any amount that the jury should find that he probably would suffer in the future. The particular part of the charge complained of in this connection reads as follows: "If you find and believe from a preponderance of the evidence that plaintiff's earning capacity has been diminished, or will be diminished in the future, by reason of his injuries, if any, you may take such facts, if any, into consideration." It is contended by defendant that there was no testimony offered which tended to show that plaintiff's earning capacity had been diminished. It is asserted that the only evidence offered with reference to his ability to earn money consisted of his own statements, to the effect that he had been earning on an average of $200 to $250 a month for the two years immediately preceding the date of his injuries; that his work consisted of selling oil products on commission but that out of his gross earnings he had to furnish his own capital and equipment, hire and pay for a helper and pay all losses sustained by reason of bad accounts. It is insisted by defendant that since there was no testimony offered to show what these deductions were, there was no basis shown from which it could be determined what plaintiff's earnings were and consequently the jury could not find to what extent they had been diminished.

We do not construe the testimony of plaintiff in regard to his earnings prior to his injuries as does the defendant in his briefs. The plaintiff was questioned by his counsel as to the nature of the business in which he had been engaged for about two years prior to the accident. He said he had been selling oil products in the Anson, Texas, territory, on commission. He described the nature of the work and was asked: Question: "How much money were you making a month on an average prior to the time of this collision?" An objection to the inquiry was made because it embraced his own earnings, as well as returns upon his capital invested, which

plaintiff had said was about $1,500. His counsel changed the question to this form: Question: "Are you familiar with the value of services of the kind that you were rendering at that time, in Anson and in that territory?" Answer: "Yes, sir." Question: "Did you know any other men that were engaged in the same kind of work, in that locality out there, for oil companies?" Answer: "Yes, sir." Question: "And were you well acquainted with the value of that kind of services?" Answer: "Yes, sir." * * * Question: "Well, I am talking about a man hired out to other people, doing the same kind of work that you were doing, soliciting and delivering. What were the services of that nature worth out there at the time you got hurt?" Answer: "Around two to two hundred and fifty dollars (a month)."

On cross-examination, plaintiff testified that he could not name any person in that territory who had been employed upon a salary to do the particular kind of work that had been done by him. In response to further questions, he said that $200 to $250 a month was an average, like he had told his counsel; that that amount was what he averaged. Defendant then moved to strike plaintiff's former testimony because it was not the proper test; the motion was overruled and exception taken. Plaintiff further testified on cross-examination that he had to deduct from his gross income his expenses for help when hired, expense of operating his truck, its wear and tear, telephone calls and bad debts incurred.

He also said that he had hired a helper and paid him $12 a week, but did not state when, with reference to the injury, such a helper had been employed. His wife testified that he was in good health prior to the injury and had done all of his work. This testimony was susceptible to more than one construction, and the jury would have been justified in finding that if any helper was hired, it was after plaintiff was injured.

■ We have searched the record and do not find that plaintiff ever testified on direct examination what amount he had earned before he received the injuries, but, as shown, he qualified as an expert on the reasonable amount of wages necessary to employ a person to do the work performed by him in that locality. True, the cross-examiner implied that he had testified as to his own earnings, and the witness then testified to items of expense necessarily deductible. We do not construe this testimony as being in conflict with his positive testimony as to reasonable wages for one performing that work. But, to give it the interpretation applied by defendant, it produced only a conflict in his statements. This would not destroy the effect of his testimony at all; it only affected the weight to be given it by the jury; it was nonetheless a jury question. This point has been many times adjudicated against the contention of defendants. In support of this holding, we cite New St. Anthony Hotel Co. v. Pryor, Tex.Civ.App., 132 S.W.2d 620, writ refused, in which case a dozen or more prior cases are reviewed, to which we also refer.

■ The extent of plaintiff's injuries are shown to be serious. He was unconscious for about five days, remained in the hospital five weeks, and had been unable to do gainful work since he was injured. He had ten or more fractured ribs, a brain concussion, severe cuts on the head and face, fractured nose, a collapsed lung, injured bladder wall, causing blood to be emitted through the urine, fractured thigh and a general nervous condition. The physician said the plaintiff was still suffering from these conditions at the time of the trial, and that he was unable to say how long they would continue to affect him. Considering all these matters, we hold that it was proper for the court to instruct the jury to take into consideration the diminished earning capacity of plaintiff, if they found that it had been diminished. The assignments upon which the proposition is based must be overruled.

Defendant's second proposition is based upon assignments from six to twenty-six, both inclusive. These assignments and the proposition present the rulings of the trial court in permitting plaintiff's counsel to interrogate defendant's witnesses, as concerning, and in permitting them to testify that they had received money from the defendant prior to the time they offered to testify in the case; it being made to appear that three of defendant's witnesses were passengers on the bus that was involved in the collision, received injuries at the time and that the defendant had paid them various sums in consideration that they would not sue for the injuries sustained.

It is claimed by defendant that testimony of such witnesses that they had been

paid small sums by him, for the consideration not to file suit for such claims, amounted to compromises and were not admissible against defendant.

We are not unmindful of the general rule so well established that compromises and offers of compromises are not admissible in evidence, yet we think the rule not applicable here. There is another rule of procedure equally as well settled as the one mentioned; it being that a party on cross-examination may develop any fact or circumstance which tends to show interest, prejudice or bias of a witness. Defendant introduced three witnesses who were passengers on the bus at the time of the collision; their testimony was such as to exonerate the bus driver of negligence, and to place the whole blame on plaintiff for the accident. In many respects their testimony was more favorable to the proper conduct of the driver than was his own. On cross-examination, plaintiff developed from the testimony of each of the witnesses that they had been paid for their respective claims against defendant. In offering the testimony, plaintiff's counsel stated to the court that he was offering the testimony to show the interest of the witness in the controversy between the parties.

Such testimony as that complained of is admissible as affecting the credibility of the witness before the jury. There is good reason for such a rule. The jury is entitled to know any fact which would tend to influence the testimony given by a witness; his interest in the outcome of the suit is a potent factor. The interest of a witness may be determined by a cross-examination on any point that is calculated to disclose a motive for the testimony offered. The rule is based upon the theory that the jury should know such facts, the better to enable them to weigh the words of the witness. Trinity County Lumber Co. v. Denham, 88 Tex. 203, 30 S.W. 856.

If the defendant had requested it, the court could have properly limited the testimony complained of to such effect, if any, it may have had upon the credibility of the witnesses and the weight to be given by the jury to their testimony; but no such request was made. Absent such a request, the testimony was admissible as affecting its weight, the purpose for which it was shown to have been offered by plaintiff. Missouri K. & T. R. Co. v. Kellerman, 39 Tex.Civ.App. 274, 87 S.W. 401, writ refused. The testimony complained of would not have been admissible as tending to establish a confession of negligence by defendant; for the reason, the degree of care which defendant owed to the passengers on the bus was materially different to his obligations to plaintiff. But the purpose for which it was offered rendered the testimony admissible, and no error is shown by the ruling of the court.

Assignment of error 27 and the proposition thereunder complain of the definition given by the court of "unavoidable accident". In the court's charge, he said: "Unavoidable accident means an event which occurs suddenly and unexpectedly without negligence of the plaintiff or defendant." The objection made to the definition was that as worded it omitted the elements of proximate cause and foreseeability.

We entertain very grave doubt that the question of unavoidable accident was raised by the evidence, in this case. Plaintiff's car was going south on Hemphill Street at the time of the collision. The bus was traveling north on the same street. The most seriously controverted points raised by the testimony was as to which car was on its left side of the center of the street at the time of the accident. Defendant argues that the "big contention about the collision was as to which vehicle was over the center of the street." We, too, think a determination of that question eliminates all other theories of how the accident could have happened. Defendant argues that it is obvious that the issue of unavoidable accident was raised by the evidence; that the jury could have believed that because the accident happened at night and because the traffic was heavy, and because there were so many lights and because there was no definite marker in the center of the street, that each driver believed himself to be on his right side of the center of the street, until it was too late to avoid the collision. We do not think the various hazards suggested by counsel argue anything in favor of unavoidable accident—that is, from some cause other than the negligence of one of the drivers. To our minds, they only present additional reasons for the use of a greater degree of care on the part of each to act prudently; that is, to conduct themselves at the time, in the manner that a reasonably prudent person would have acted

under the same or similar circumstances. To fail to do so would be negligence and take the case out of the realm of unavoidable accident. A very similar situation to the one now before us is to be found in Younger Bros. v. Power, Tex.Civ.App., 118 S.W.2d 954, 958, application for writ of error dismissed. The court there said: "To say that this accident could not have been prevented by either one or the other of the two parties to it by the use of means suggested by common prudence—that is, by each of them having remained on his own right-hand side of the black stripe in the center of that highway—is to belie the direct testimony of them both, * * * it conclusively appears that if neither the one nor the other of them had been on his own left-hand side of the highway at the time, the collision would not and could not have happened; that being indisputably and unmistakably so, the inquiries were reduced to which one was so on his left-hand side, was he negligently there, and if so, did that negligence proximately cause the injuries to this appellee? Each driver * * * claimed that he was on the right-hand side, and that the other was on the left-hand side, and stuck to it throughout the trial before the jury, thus raising that as the clear-cut and controlling fact-issue in the case." In such circumstances, the court held that the theory of unavoidable accident was not presented by any evidence in the case.

It has only been during the last decade that our courts have required of plaintiffs, seeking damages as a result of negligence, to assume, in addition to the establishment of negligence and proximate cause, the burden of showing that their injuries were not sustained from some other cause—that of an unavoidable accident. However, this added responsibility need not be determined, except and unless there is evidence tending to show it. There is an inclination of some of our courts to recognize the necessity of the submission of that issue to the jury on very slight provocation, a procedure to which we do not subscribe. We believe that issue, like any other fact issue, should be supported by evidence of a substantial nature and of such probative force as would support an answer by the jury. Viewing the testimony in this case, if the jury had answered that the accident was an unavoidable one—such as resulted from some outside source other than the negligence of one of these parties, we would be at a loss to find support for that kind of an answer in this record.

■ However, if we be mistaken in saying that unavoidable accident was not raised by the evidence, we find that the definition given by the court in this case is in harmony with and has the express approval of our Supreme Court, in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, 958. In reversing that case, the court said: "We merely suggest that it will be more helpful to the jury upon another trial for the court to define the term [unavoidable accident] substantially as, 'an event which occurs without the negligence of the plaintiffs or the defendant.' "

In Sproles Motor Freight Lines v. Juge, Tex.Civ.App., 123 S.W.2d 919 (writ dismissed, correct judgment), this court approved the definition of unavoidable accident, as suggested in the Richardson case, supra, and commended the trial court for having followed it in the face of the many conflicting decisions previously announced.

Amberson v. Woodul, Tex.Civ.App., 108 S.W.2d 852, writ dismissed, approved a definition substantially as was given in the instant case; the definition there approved shows to be, "An accident which happens without fault on the part of either party, neither party being negligent, is classed in law as unavoidable." That opinion cites in support of the holding case of Green v. Texas & Pacific R. Co., 125 Tex. 168, 81 S.W.2d 669, 673. Substantially the same definition was approved by the Commission of Appeals in Dallas Ry. & Terminal Co. v. Darden, 38 S.W.2d 777.

The latest expression on the subject by our Supreme Court which has come to our attention is found in Dallas Ry. & Terminal Co. et al. v. Price, 131 Tex. 319, 114 S.W.2d 859. In that case, there were two defendants, the Railway Company and a Cab Company. The trial court instructed the jury that unavoidable accident, as used in the charge, meant an event which occurs without having been proximately caused by the defendants, naming them. It was noted by the court that the definition limited the cause of the accident to something other than the negligence of the defendants, saying nothing about negligence of the plaintiff. Of course, the definition was condemned. The court then explains what constitutes an unavoidable accident, using the language found in many

of the older cases. Making the definition more concise, the court said (131 Tex. 319, 114 S.W.2d at page 860): "In other words, an 'unavoidable accident' is one which happens without being caused by the negligence of either party. The definition in this instance should have, in effect, told the jury that by the term 'unavoidable accident,' as used in the question submitting the issue, is meant an event which occurs without having been proximately caused by the negligence of the defendant naming it, or of the plaintiff." No reference is made by the court to its former holding in the Richardson case, supra, either by criticism or approval.

The Supreme Court, in Gulf, C. & S. F. R. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795, decided since the Price case, supra, made no suggestion of change in the definition of unavoidable accident from that given in the Richardson case, supra, but only suggested an improvement upon the manner in which the jury should be required to answer the issue.

In Dempster Mill Mfg. Co. v. Wiley, Tex.Civ.App., 131 S.W2d 257, 259, writ dismissed, judgment correct, a definition of unavoidable accident in this language was approved: "An unavoidable accident is one that happens suddenly and without fault or negligence of any party affected thereby." It was further held in that case that the issue of unavoidable accident was not raised by the evidence and even if the definition was improper, it presented no reversible error.

Community Natural Gas Co. v. Lane, Tex.Civ.App., 133 S.W.2d 200, 202, application for writ of error dismissed, correct judgment (Lane v. Community Natural Gas Co., Tex.Sup., 134 S.W.2d 1058), held that an unavoidable accident was properly defined as, "An occurrence which happens without the fault of either the plaintiff or the defendant." The definition given by the trial court in the instant case having the sanction and approval of the Supreme Court, we find no reversible error presented, even if that issue is raised by the evidence.

Defendant's 28th assignment of error presented by his fourth proposition is to the effect that the court should not have entered judgment for plaintiff for $520, the difference in the value of the Pontiac car just prior to and immediately after the accident, for the reason that plaintiff had been paid by an insurance company for the loss of his car and had assigned to the company an interest in the judgment to be obtained to the extent of payment received by him.

■ There is no merit in this contention. It is well settled in this State that when a plaintiff assigns to another an interest in his chose in action, such assignee receives an equitable interest in the recovery, yet the assignee does not become a necessary party to the suit, but the assignor may, and in fact it becomes his duty to, prosecute the suit in his own name, for the use and benefit of the assignee, to the extent of the interest assigned.

In Kell et al. v. Mulligan, Tex.Civ.App., 254 S.W. 621, it was held that a broker who assigned his commissions before trial still had legal title to the chose in action, and might bring suit in his own name, and while the equitable owners were proper parties, they were not necessary parties.

■ Perhaps the most frequent declaration of the rule here involved occurs in cases where a litigant assigns a part of his cause of action to his attorneys. It has never been held, insofar as we can find, that in such circumstances the party who made the assignment lost his right to prosecute the suit in his own name. If he should subsequently abandon the case and refuse to prosecute an appeal, his assignee could prosecute the appeal in the name of the assignor. The assignor, in fact, would have no right, as against his assignee, to abandon the suit or even settle the controversy, to the detriment of the interest of his assignee. Seiter v. Marschall, 105 Tex. 205, 147 S.W. 226, and the many cases there cited.

In Dempster Mill Mfg. Co. v. Wiley et al., Tex.Civ.App., 131 S.W.2d 257, error dismissed, judgment correct, Wiley was a Works Progress Administration laborer and received an injury. Under 5 U.S.C.A. §§ 776 and 777, the federal agency employing him was obligated to advance the payment of medical and hospital bills and when so done the employee was required to assign his claim against the offending party to the extent of the advancements made by the federal agency. Wiley complied with these provisions and continued to prosecute his suit against the defendant, who was alleged to have been responsible for his injuries. It was held that the assignment by the injured party, of a part of his claim to cover medical and hospital

bills so advanced, did not preclude him from recovering the items.

No errors are presented by the assignments in this case, and the judgment of the trial court is affirmed.